**In re Jerry W. McINTYRE and Waltrout McIntyre, Debtors.**

**Waltrout McIntyre, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 98–17192.**

United States Court of Appeals, Ninth Circuit.

Submitted March 17, 2000*

Filed July 13, 2000

---

\* The panel finds this case suitable for decision without oral argument. Fed. R.App. P.

34(a)(2).

Waltrout McIntyre, Stockton, California, in pro se, for the plaintiff-appellant.

Loretta C. Argrett, William S. Estabrook, and Janet A. Bradley, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Before: O'SCANNLAIN, LEAVY, and RYMER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the Internal Revenue Service may levy upon ERISA-regulated pension benefits to satisfy a husband's tax debt against the claim that the wife has a vested interest in half of those benefits under community property laws.

I

Waltrout McIntyre's husband and co-debtor, Jerry McIntyre, owed almost $300,000 in overdue federal income taxes for the years 1983–1995. In 1996, the Internal Revenue Service ("IRS") served a Notice of Federal Tax Levy upon Jerry's pension plan, the California Field Iron Worker Pension Trust Fund, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Pursuant to the IRS levy, the pension plan began paying Jerry's pension benefits directly to the IRS in August 1996.

In May 1997, the McIntyres filed a joint bankruptcy petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 et seq. In June 1997, Mrs. McIntyre initiated within the bankruptcy proceedings an adversary proceeding against the United States under 26 U.S.C. § 7426, claiming that the IRS's levy of Jerry's pension benefits was wrongful insofar as it seized her one-half interest in those benefits (which she purported to hold under California's community property regime).

The bankruptcy court granted the IRS's motion for summary judgment, rejecting her contentions both that the IRS lacked authority to levy her interest in the pension benefits in satisfaction of her husband's tax debt and that ERISA precluded the use of those benefits to discharge a federal tax liability.

II

■■■■ "We review the bankruptcy court's ... conclusions of law de novo." *Levin v. Maya Constr. (In re Maya Constr. Co.)*, 78 F.3d 1395, 1398 (9th Cir. 1996). On appeal from the district court, "we independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir.1993).

A

■■■■ There is no dispute that the IRS may levy on a delinquent taxpayer's property for the enforcement of his federal tax obligations. *See, e.g., United States v. National Bank of Commerce*, 472 U.S. 713, 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Broad authority to do so is granted by statute:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person.

26 U.S.C. § 6331(a).[1] Nonetheless, Mrs. McIntyre maintains (and the United States

---

1. There is no claim that Jerry's pension benefits fall under an exemption enumerated in 26 U.S.C. § 6334.

does not contest) that this provision authorizes the IRS to levy on property only insofar as the interest of the delinquent taxpayer extends and no further. It is well established that "state law controls in determining the nature of the legal interest which the taxpayer ha[s] in property." *Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 1035 (1940).

Mrs. McIntyre objects to the IRS's levy of the whole of her husband's pension benefits because, under California law, the interest of her husband (the delinquent taxpayer) in those benefits extends only to half of their face value. This is so, she argues, because the pension benefits are subject to California's community property regime, which gives husband and wife "present, existing, and equal interests" in community property "during continuance of the marriage relation." Cal. Fam.Code § 751 (West 2000).[2] Mrs. McIntyre contends that, under § 751, she has an "exclusive" half-interest in her husband's pension benefits, that her husband's own interest in those benefits thus extends only to half of their value, and that the other half (her half) is therefore beyond the IRS's levy power pursuant to 26 U.S.C. § 6331.

### B

■ There is no authority for Mrs. McIntyre's characterization of her property interest in her husband's pension benefits as "exclusive" of any that he may retain. As an initial matter, Family Code § 751 does not speak in terms of any "exclusive" divisions of community property: That provision refers to "equal interests" in the whole of the community property rather than in terms of "exclusive" interests in only half of the community property. Family Code § 910 further undermines Mrs. McIntyre's characterization. That section establishes that:

the *community estate is liable* for a debt incurred by either spouse before or

during marriage, regardless of which spouse has the management and control of the property and *regardless of whether one or both spouses are parties to the debt* or to a judgment for the debt. Cal. Fam.Code § 910(a) (emphases added). We have held before that, by granting creditors recourse against the whole community estate on debts of only one spouse, California law "implicitly" establishes that spouse's "interest" in the whole of the community property, at least to a degree sufficient for the IRS to impose tax liens under the Internal Revenue Code. *See Babb v. Schmidt,* 496 F.2d 957, 960 (9th Cir.1974).

As both the bankruptcy court and the district court indicated, our decision in *Babb* must foreclose Mrs. McIntyre's claim, at least to the extent that she bases it on California's community property regime. Like her, the plaintiff in *Babb* was a wife who brought suit for wrongful levy under 26 U.S.C. § 7426 because the IRS had sought recourse against community property for satisfaction of tax debts owed by the husband alone. *See id.* at 958. The wife argued that, because California law gave her a vested interest in half of the moneys in the couple's bank accounts, "her husband [could] not be said to have 'property or rights to property' " in that half, and the IRS thus could not attach it. *Id.* We rejected the wife's argument. We held that California law has "implicitly given the husband rights in [the wife's share] sufficient to meet the requirements" for tax liens against the property of delinquent taxpayers. *Id.*

The plaintiff in *Babb* contended, just as Mrs. McIntyre does here, that California's provision of recourse for one spouse's creditors against the other spouse's share of the community property is merely a rule regulating creditors' rights and does not define the first spouse's "rights to property" for purposes of federal tax law. *See*

---

**2.** The government concedes that the pension benefits are community property, and thus we

shall not address that claim here.

*id.* at 959. We dismissed this contention, however, and our reasoning plainly disposes of Mrs. McIntyre's further argument that the scope of the federal authority to attach a wife's property for the satisfaction of a husband's tax debt should be uniform across states. *See id.* at 958–59 (distinguishing contrary holdings from cases in Washington and Arizona by noting that those states defined the husband's property interests differently by "deny[ing] premarital creditors of the husband access to the wife's share of the community").

**1**

Mrs. McIntyre's efforts to distinguish *Babb* are unavailing. She first asserts that *Babb* turned on the extent of a federal tax lien against a wife's share under 26 U.S.C. § 6321 rather than the IRS's authority to levy thereon pursuant to 26 U.S.C. § 6331. This observation is irrelevant, for the provisions for the federal tax lien and the IRS's levy power are both explicitly limited to "all property and rights to property ... belonging to" the delinquent taxpayer, 26 U.S.C. §§ 6321, 6331. The Supreme Court has thus acknowledged the similarity in the scope of the provisions. *See National Bank of Commerce,* 472 U.S. at 719, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) ("The statutory language 'all property and rights to property,' appearing in § 6321 (and, as well, in § 6331(a) ... ), is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.").[3]

**2**

Mrs. McIntyre next argues that our holding in *Babb* is inapplicable because the property at issue in that case, a bank account, was not regulated by ERISA whereas the pension payments at issue in this case are. Her distinction of *Babb* based on the role of ERISA in this case appears to rest on one of two arguments; neither of them is valid.

The first argument is that ERISA effectively preempts Cal. Fam.Code § 910 and thereby preempts California law to the extent that it gives Mrs. McIntyre's husband any interest in her share of his pension benefits (by giving to his creditors recourse against her share). Because Mrs. McIntyre's husband has no interest in her share under the remaining, non-preempted provisions of California law, the argument goes, the scope of the IRS's levy authority cannot extend to her share.

This argument relies on an over-exuberant interpretation of ERISA's anti-alienation provision, which requires only that any ERISA-governed pension plan "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The underlying premise is that, because ERISA's anti-alienation provision would preclude the operation of § 910 to the extent that it would permit creditors to proceed against the pension benefits at issue, *cf. Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990); *Ablamis v. Roper,* 937 F.2d 1450, 1458 (9th Cir.1991), the same provision also must preclude the operation of § 910 to the extent it "implicitly" grants an interest in the same benefits to her husband. We reject this premise. Although the creditors' recourse guaranteed by § 910 may be ineffective against Mrs. McIntyre's share of her husband's pension benefits, it does not follow that the husband's property interest therein has been similarly vitiated. ERISA's anti-alienation provision plainly does not preempt the operation of California law insofar as it vests in the husband a continuing property interest in his own pension benefits, for less is being alienated from the plan beneficiary (the husband) in this circumstance than if his interest in those benefits were entirely foreclosed. Mrs. McIntyre's argument based upon ERISA's preemption of § 910 thus must fail.

---

**3.** It is true that the IRS's levy power is somewhat narrower in that it does not extend to property exempted under § 6334, but those exemptions are not relevant to Mrs. McIntyre's case.

The bankruptcy and district courts interpreted Mrs. McIntyre's argument to be simply that ERISA's anti-alienation provision prevents the IRS from levying on the benefits from any ERISA-governed pension plan. As an initial matter, the Internal Revenue Code expressly indicates that no other federal law shall exempt property from the IRS's authority to levy a delinquent taxpayer's property under § 6331. *See* 26 U.S.C. § 6334(c). Moreover, ERISA's anti-alienation clause cannot prevent the IRS from undertaking what would otherwise be a valid exercise of its levy authority under 26 U.S.C. § 6331, because ERISA itself has a saving clause that states: "Nothing in this subchapter [which includes the anti-alienation provision] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(a). The only other circuit that has addressed this issue reached the same conclusion, which authority we find persuasive. *See Shanbaum v. United States*, 32 F.3d 180, 182–83 (5th Cir.1994); *cf. United States v. Sawaf*, 74 F.3d 119, 123–24 (6th Cir.1996) (upholding the treasury regulation that authorizes the IRS to levy on the benefits of an ERISA-governed plan and applying that regulation to uphold the IRS's collection against such benefits); *Anderson v. United States*, 149 B.R. 591, 595 (9th Cir.BAP 1992) (upholding a tax lien against benefits from an ERISA-governed plan).[4] We think it is plain that the IRS's authority to proceed against a delinquent taxpayer's interest in benefits from an ERISA-governed plan is not constrained by ERISA's anti-alienation provision.

AFFIRMED.

---

4. Treasury regulations interpreting the same language used in ERISA's anti-alienation provision also suggest that the IRS's levy authority is not restricted thereby. *See* 26 C.F.R. § 1.401(a)–13(b)(2) ("A plan provision satisfying the [anti-alienation] requirements … shall not preclude the following: (i) The enforcement of a Federal tax levy made pursuant to section 6331.").