UNITED STATES of America,
Plaintiff–Appellee,

v.

James JACKSON, Defendant–Appellant.

No. 99–50302.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2000

Filed Oct. 12, 2000

As Amended Nov. 7, 2000.

Kenneth M. Stern, Woodland Hills, California, for the appellant.

David C. Scheper and David Vaughn, Office of the U.S. Attorney, Los Angeles, California, for the appellee.

Before: PREGERSON, W. FLETCHER, and GOULD, Circuit Judges.

W. FLETCHER, Circuit Judge:

This case presents the question whether, as part of a criminal sentence, a district court may order that undistributed funds from a pension plan covered by the Employee Retirement Income Security Act ("ERISA") be used to make immediate payment of restitution. We hold that unless the crime involved the ERISA pension plan in question and restitution is ordered to that plan, undistributed funds are not available for such payment.

I

Appellant James Jackson ("Jackson") was indicted on forty-six counts of embezzling labor union assets, in violation of 29 U.S.C. § 501(c). He pled guilty to six of these counts. As a condition of his plea, Jackson agreed to make full restitution for the losses caused by his crimes, in an amount to be determined by the district court based on his ability to pay.

Jackson had two pension plans from a prior employer, only one of which was covered by ERISA. See 29 U.S.C. § 1003. According to the presentence report, Jackson had "cashed out" his non-ERISA plan and still had most of the proceeds in his possession. Jackson had not cashed out his ERISA plan. However, according to the presentence report, a representative of the ERISA plan had informed the probation officer that Jackson had "inquired about" receiving a "lump sum payment" of the entire amount in the plan, estimated to be $194,825.37. The report identified both plans as potential sources of funds from which Jackson could pay restitution. In a sentencing recommendation letter, the probation officer recommended that the district court order Jackson to pay a total of $289,799.47 in restitution, $63,434.04 to be paid within thirty days and the remainder within ninety days. It is clear from the letter that Jackson's ability to pay the remainder depended, in substantial part, on the availability of the undistributed assets in his ERISA plan for that purpose.

At the first of two sentencing hearings, on March 29, 1999, the Assistant United States Attorney expressed concern that Jackson was making inquiries about cashing out his ERISA pension plan and was "trying to move this money beyond the reaches of a restitution order." In response · to a specific request from the government, the district court ordered Jackson not to cash out the ERISA plan "except on further order of the Court."

At the second sentencing hearing, on April 5, 1999, the district court ordered that Jackson pay restitution in the total amount of $217,878.15, of which $194,000 was to be paid within ninety days. The $194,000 figure represented, in the district court's words, the "rounded off" amount of money in the ERISA plan. The ninety days represented the time the court thought necessary to "get those monies and have them available." The court indicated that it would be willing to extend the period "if it appears that it's going to take longer."

At no time did the Assistant United States Attorney or Jackson's counsel indicate to the district court that there was any impediment to requiring Jackson to cash out his ERISA pension plan in order to make immediate payment of restitution. Indeed, both counsel appear to have operated on the opposite assumption: The premise of the district court's March 29 order, requested by the government and

unopposed by Jackson's counsel, was that the ERISA funds should remain in the plan in order to ensure that they would be available for immediate payment.

On appeal to this court, Jackson claims that the order requiring him to pay immediate restitution out of the proceeds of his undistributed ERISA pension plan violates the anti-alienation provision of ERISA. *See* 29 U.S.C. § 1056(d)(1). Because Jackson did not raise this objection at sentencing, we review for plain error. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

## II

■ ERISA's anti-alienation provision states, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Based on this provision, the Supreme Court has ruled out "any generalized equitable exception-either for employee malfeasance or for criminal misconduct-to ERISA's prohibition on the assignment or alienation of pension benefits." *Guidry v. Sheet Metal Workers Nat'l. Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). In reaching this conclusion, the Court stated:

> Section [1056(d)(1)] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Id.*

■ The district court's order that $194,000 in restitution be paid within 90 days was clearly premised on its authority to order Jackson to "cash out" his undistributed ERISA pension plan funds to comply with its restitution order. Section 1056(d)(1) and *Guidry* make it clear that

the district court had no such authority. We note the irony of the result. ERISA's anti-alienation clause does not apply to pension funds that have already been distributed to the beneficiary. *See Wright v. Riveland,* 219 F.3d 905, 919-21 (9th Cir. 2000). If the district court had not ordered Jackson to leave his funds in the ERISA plan, and if Jackson had voluntarily cashed out that plan, the distributed funds would have been available for immediate payment of restitution.

The result in this case would also have been different if Jackson had been convicted of breaching a fiduciary duty to the union's pension plan and if the district court had ordered restitution to that plan. *See United States v. Gaudet,* 966 F.2d 959 (5th Cir.1992). ERISA's anti-alienation provision "shall not apply to any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan if—(A) the order or requirement to pay arises—(i) under a judgment of conviction for a crime involving such a plan." 29 U.S.C. § 1056(d)(4). However, Jackson was convicted of a crime involving the union rather than its pension plan. The Supreme Court has made it clear that the union and the pension plan are "distinct legal entities." *Guidry,* 493 U.S. at 373, 110 S.Ct. 680.

Because of the clarity of ERISA's anti-alienation provision, we hold that the district court plainly erred. We reiterate, however, that neither the Assistant United States Attorney nor Jackson's counsel drew the district court's attention to the provision. We are confident that, had they done so, the district court would have reached the correct result.

## III

We reverse and remand for a revision of the restitution order based on Jackson's ability to pay. On remand, the district court should treat undistributed ERISA

pension plan funds as not currently available for restitution.

REVERSED and REMANDED.