MEMORANDUM OPINION
 

 ELLIS, District Judge.
 

 At issue in this garnishment proceeding is whether the government is barred by ERISA,
 
 [1]
 
 specifically 29 U.S.C. § 1056(d)(1), from garnishing the retirement accounts of a criminal defendant for the purpose of collecting amounts ordered in restitution. For the reasons stated below, ERISA does not bar the government from enforcing the criminal restitution order by garnishing defendant’s retirement accounts.
 

 I.
 
 [2]
 

 On September 26, 2003, defendant Charles Clinton James pled guilty and was convicted of theft from a program receiving federal funds, to wit, the National Science Foundation (“NSF”), in violation of 18 U.S.C. § 666. Located in Arlington, Virginia, NSF is an independent federal agency that promotes science and engineering through programs that invest over $4.7 billion per year in almost 20,000 research and education projects, including almost $900 million for projects directed towards science education. Within NSF, the Directorate for Education and Human Resources (“EHR”) is responsible for the health and continued vitality of our nation’s science, mathematics, engineering, and technology education programs and provides leadership in the effort to improve education in these areas. EHR’s Division of Elementary, Secondary, and Informal Education (“ESIE”) specifically focuses on pre-kindergarten through twelfth grade science, technology, engineering, and mathematics education.
 

 In 1993, the Carnegie Institution of Washington (“CIW”), a private, nonprofit organization engaged in basic research and education in biology, astronomy, and the earth sciences, submitted a proposal to ESIE’s Teacher Enhancement program to create the Carnegie Academy for Science Education (“CASE”). The CASE program was designed to increase D.C. public school teachers’ knowledge of science and to present new methods of teaching and presenting science to students. CIW’s CASE proposal was accepted and NSF awarded CIW a 5-year $3.8 million grant (“the NSF Grant”) for the CASE project under the direction of a Principal Investigator (“PI”) and two Co-PIs, one of whom was the defendant in this case. CIW also used funds from other sources to support the CASE project. In his role as Co-PI on the CASE project, defendant was authorized to make purchases of educational materials.
 

 Beginning in or about July 1994, defendant submitted “Request for Check” forms to purchase items for his personal use and
 
 *DCCCXLVI
 
 facilitated payment from the NSF Grant account and other privately funded accounts by submitting CIW forms on which he identified personal purchases as CASE-related purchases. Moreover, in 1997 CIW issued a credit card to defendant for purchases of educational materials and defendant thereafter submitted similar paperwork to CIW to facilitate payment of this credit card bill. Items that were plausibly CASE-related (such as science-related children’s books) were accurately identified on reimbursement forms (although defendant did not disclose that he had taken these items to his home). On four occasions, defendant fabricated false invoices/receipts to attach to the CIW forms, and at other times he attached the actual receipts, but wrote false information on the reimbursement forms to obscure the nature of his personal purchases. Through this scheme, defendant routinely charged the NSF Grant account and other CASE-related accounts for a wide range of personal purchases, including groceries, garden supplies, hardware, clothing, jewelry, toys, furniture, and pet supplies.
 

 In 1995, CIW hired defendant’s wife to work on the CASE project on a part-time basis. She was paid $31.25 per hour based on a hand-written time sheet submitted bimonthly. Defendant’s wife, however, never actually filled out her time sheets. Instead, defendant filled them out, signed his wife’s name, and submitted the time sheets to CIW. On sixty-one (61) time sheets submitted from February 1995 to October 1997, defendant exaggerated the hours worked by his wife on the CASE project, resulting in substantial fraudulent charges to the NSF Grant, as well as other CIW CASE accounts.
 

 In total, defendant stole $202,000 from NSF. Defendant was sentenced to twelve (12) months imprisonment and two (2) years of supervised release. He was also ordered to pay NSF $93,053 in restitution, due and payable immediately,
 
 [3]
 
 and a $100 special assessment. In the event that restitution was not paid immediately, defendant was ordered, as a special condition of his supervised release, to pay restitution at the monthly rate of $150 beginning sixty (60) days after his release from imprisonment, until restitution is paid in full. Currently, defendant has paid only $50 toward his restitution obligation.
 
 [4]
 

 On November 28, 2003, at the request of the government, the Clerk issued a Writ of Continuing Garnishment, which directs the garnishee “to withhold and retain any property in which the defendant has a substantial nonexempt interest and which the garnishee is or may become indebted to the defendant pending further order of the court.” On March 8, 2004, the garnishee filed an Answer in which it admitted that defendant had three (3) separate accounts, presumably IRAs or other retirement accounts, with a total value of $146,560.99. In its Answer to the Writ, however, the garnishee claimed that these accounts “are exempt from all legal process as part of the retirement plans of private employers,” citing
 
 Guidry v. Sheet Metal Workers National Pension Fund,
 
 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) for its interpretation of 29 U.S.C. § 1056(d)(1).
 

 II.
 

 Analysis of whether defendant’s retirement accounts are exempt from gar
 
 *DCCCXLVII
 
 nishment properly begins with the pertinent ERISA provision, which states that “each pension plan shall provide that benefits under the plan may not be assigned or alienated.” 29 U.S.C. § 1056(d)(1). In
 
 Guidry v. Sheet Metal Workers National Pension Fund,
 
 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court recognized that, absent some exception to § 1056(d)(1)’s general statutory ban on alienation, this provision bars garnishment of pension benefits in an ERISA qualified plan. There, the Supreme Court also refused “to approve any generalized equitable exception — either for employee malfeasance or for criminal misconduct— to ERISA’s prohibition in the assignment or alienation of pension benefits,” reasoning that § 1056(d) “reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners ... even if that decision prevents others from securing relief for the wrongs done them.”
 
 Id.
 
 at 376, 110 S.Ct. 680. Indeed, the Supreme Court specifically admonished that “[i]f exceptions to this policy are to be made, it is for Congress to undertake that task.”
 
 Id.
 

 It appears that precisely this has occurred; Congress in passing the Mandatory Victim Restitution Act of 1996
 
 [5]
 
 (“MVRA”) has created just such an exception. In seeking a Writ of Continuing Garnishment, the government is proceeding under the MVRA, specifically 18 U.S.C. § 3613(a), which operates as a con-gressionally-created exception to the anti-alienation provision in 29 U.S.C. § 1056(d). That section provides, in relevant part, that:
 

 The United States may enforce a judgment imposing a fine [or an order of restitution]
 
 [6]
 
 in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law.
 
 Notwithstanding any other Federal law
 
 (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—
 

 (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
 

 (2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and
 

 (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal or State law.
 

 18 U.S.C. § 3613(a) (emphasis added). The language of § 3613(a) thus makes clear that the government may enforce a criminal fine or restitution order against all of a defendant’s property “except that property which would be exempt from a levy for the payment of federal income taxes.”
 
 United States v. Rice,
 
 196 F.Supp.2d 1196, 1199 (N.D.Okla.2002). Because defendant’s interest in an ERISA qualified plan does not fit within any of the exceptions listed in § 3613(a), it follows that ERISA is no bar to garnishment of a qualified pension plan to collect a criminal restitution order.
 

 Moreover, Congress has mandated that for purposes of enforcement, a restitution
 
 *DCCCXLVIII
 
 order is to be treated as “a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986.” 18 U.S.C. § 3613(c). This is significant because the Internal Revenue Service’s regulations indicate that delinquent taxes may be collected via a levy against an ERISA plan..
 
 See
 
 26 C.F.R. § 1.401(a)-13(b)(2).
 
 [7]
 
 Because § 3613 makes clear that restitution orders in favor of the United States are to be treated like tax liabilities, it appears that, like delinquent taxpayers, criminal defendants owing restitution to the government cannot protect their pension benefits from being used to satisfy their monetary obligation to the government.
 
 See Rice,
 
 196 F.Supp.2d at 1201.
 

 Although there does not appear to be any controlling circuit authority, other district courts across the country have reached the same result.
 
 See, e.g., United States v. Tyson,
 
 242 F.Supp.2d 469, 474 (E.D.Mich.2003) (“[T]his Court holds that 18 U.S.C. § 3613 is an express statutory exception to the anti-alienation provision of ERISA found at 29 U.S.C. § 1056(d)(1).”);
 
 Rice,
 
 196 F.Supp.2d at 1202 (“With the passage of 18 U.S.C. § 3613, Congress created an exception to ERISA’s anti-alienation provision by subjecting all of a criminal defendant’s property to execution for the collection of a criminal fine.”);
 
 United States v. Garcia,
 
 2003 WL 22594362 (D.Kan. Nov.6, 2003) (“[I]t is not only the text of Section 3613(a) which leads to the conclusion that the general anti-alienation protection accorded qualified plans under the tax code and ERISA does not insulate such plans from execution of unpaid criminal fines.... That is, the anti-alienation protection does not protect a qualified plan from the enforcement of federal tax levies and collection on a judgment for unpaid taxes.”);
 
 United States v. Sowada,
 
 2003 WL 22902613 (E.D.La. Dec.8, 2003) (“This Court agrees with those district courts that have concluded that the United States can garnish ERISA funds for satisfaction of criminal fines and penalties. To hold otherwise would give convicted criminal defendants greater rights than those of citizens who owe a tax debt to the government.”).
 

 This does not end the analysis, however, as in contrast to the garnishee, defendant opposes the government’s application for a writ of continuing garnishment on entirely different grounds. Defendant first asserts that garnishment of his retirement accounts is contrary to this Court’s September 26, 2003 order of restitution, relying primarily on the fact that no mention of these accounts was made when defendant’s restitution obligation was ordered, despite the fact that the accounts were listed in defendant’s presentence report. At sentencing, however, it was made clear to defendant that restitution of the full $93,053 was “due and payable immediately.” While a schedule of $150 per month was put in place in the event restitution was not paid immediately, the existence of this schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant’s restitution obligation is satisfied.
 
 [8]
 
 
 *DCCCXLIX
 
 Court-imposed payment schedules are merely one means available to enforce a restitution judgment. As the Second Circuit noted in
 
 United States v. Walker:
 

 [The MVRA] eliminates most of the discretion courts previously exercised. The court’s discretion is now restricted to crafting the schedule of payments during the time the defendant is under sentence. The significance of that schedule is diminished, however, by the fact that the victim may convert the restitution order into an abstract of judgment for the full amount of the restitution order, which “shall be a lien on the property of the defendant ... in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.”
 

 353 F.3d 130, 133 (2d Cir.2003) (citing 18 U.S.C. § 8664(m)(l)(B) and §§ 3664(m)(l)(A) & 3613(c)). Indeed, 18 U.S.C. § 3664(m) gives the government and the victim named in the restitution judgment the power to enforce a restitution judgment. In this case, the government can act both in its governmental capacity and as the named victim of defendant’s offense. Under 18 U.S.C. § 3613(a), the government has the power to enforce an order of restitution “in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law.” 18 U.S.C. § 3613(a). And there is no doubt that garnishments are in fact authorized by federal law.
 
 See
 
 28 U.S.C. § 3205.
 

 Most importantly, however, the fact that defendant’s retirement accounts were not specifically mentioned does not mean that garnishment of these accounts cannot be used to satisfy defendant’s restitution obligation. At defendant’s sentencing, the Court made pellucidly clear that defendant had an obligation to pay back all of the money he stole from the government. Garnishment of his retirement accounts is one way to ensure that defendant does so.
 

 Nor is garnishment of defendant’s retirement accounts unduly punitive, as defendant also contends. While these assets would likely prove useful to defendant’s family in the event of his death or inability to return to work, it remains the case that Congress requires that defendants be ordered to make full restitution “without consideration of the economic circumstances of the defendant.” 18 U.S.C. § 3664(f)(1)(A). Nor is restitution in itself punishment; it is simply “[a]n act of restoring to the proper owner something taken away.”
 
 Webster’s II New Riverside University Dictionary
 
 (1984).
 
 [9]
 
 Here, defendant stole thousands of dollars from the federal government. It is only just that he be required to restore this property to its rightful owner.
 

 III.
 

 Accordingly, the government’s application for a writ of continuing garnishment must be granted.
 

 An appropriate order will issue.
 

 [1]
 

 . The Employee Retirement Income Security Act of 1974, Pub.L. No. 93-406, 88 Stat. 829.
 

 [2]
 

 . The facts recited here are derived from the Statement of Facts signed by defendant as part of his plea agreement.
 

 [3]
 

 . By the time of his sentencing, defendant had made restitution to NSF in the amount of $108,497.
 

 [4]
 

 . The government notes, however, that if defendant is making payments through the Bureau of Prisons Inmate Financial Responsibility Program, as appears to be the case, he may have made one or two other small payments that have yet to be posted on the government's records.
 

 [5]
 

 . Pub.L. No. 104-132, 110 Stat. 1227.
 

 [6]
 

 . Section 3613(f) of Title 18 makes all provisions of this section, including § 3613(a), "available to the United States for the enforcement of an order of restitution.” 18 U.S.C. § 3613(f).
 

 [7]
 

 . This regulation provides that:
 

 A [pension] plan provision satisfying the requirements of subparagraph (1) of this paragraph [relating to anti-alienation and assignment] shall not preclude the following:
 

 (i) The enforcement of a Federal tax levy made pursuant to section 6331.
 

 (ii) The collection by the United States on a judgment resulting from an unpaid tax assessment.
 

 26 C.F.R. § 1.401 (a) — 13(b)(2).
 

 [8]
 

 . Indeed, if the payment schedule constituted the sole means to ensure that defendant satisfy his restitution obligation, it would result in
 
 *DCCCXLIX
 
 the collection of only $5400, a mere fraction of the $93,053 due.
 

 [9]
 

 . In this respect, it should be noted that defendant was not required to pay any criminal fine for his offense or any interest on his restitution obligation.