**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

RAYMOND P. NOVAK,
*Defendant-Appellee.*

No. 04-55838

D.C. No.
CV-03-06706-CBM

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Chief Judge, Presiding

Argued and Submitted
February 16, 2006—Pasadena, California

Filed March 23, 2006

Before: Alfred T. Goodwin, Betty B. Fletcher, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge B. Fletcher

**COUNSEL**

Debra Yang, United States Attorney, Leon W. Weidman, and Brent A. Whittlesey, Assistant United States Attorneys of Los Angeles, California, for the appellant.

Martin S. Bakst of Encino, California, for the appellee.

**OPINION**

CALLAHAN, Circuit Judge:

The United States appeals from the district court's order quashing its writ of garnishment of Raymond Novak's benefits under a pension plan subject to the Employment and Retirement Income Security Act of 1974 ("ERISA"). The dis-

trict court held that such a garnishment was prohibited by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). We reverse and remand because we determine that the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, in conjunction with 18 U.S.C. § 3613, constitutes a statutory exception to ERISA's anti-alienation provision.

I

The criminal information filed against Novak alleged that between 1995 and 1999 he transported certain valuable telephone boards in interstate commerce knowing that the boards were stolen. His then-wife was employed by Nestle U.S.A., Inc. ("Nestle"). Novak's wife would order the telephone boards for Nestle, then steal the boards and deliver them to Novak, who would sell them. Novak was also charged with failing to report the income he received from selling the stolen telephone boards on his 1997 federal income tax returns.

Novak pleaded guilty to charges of conspiracy to transport stolen goods in violation of 18 U.S.C. § 371 and filing false income tax returns in violation of 26 U.S.C. § 7206. The district court sentenced him to 24 months' imprisonment and ordered him to pay restitution in the amount of $3,360,051.67.

From February 1990 to March 2000, Novak worked as the director of telecommunications at Robinsons-May Department Stores ("May Company"). During that time, he earned pension benefits that were fully vested at the time of his plea. It appears that under the pension plan, Novak, after reaching the age of sixty-five, would be entitled to an annual payment of almost $11,000, or he could immediately withdraw the entire amount, which had a market value of $142,245.11 as of September 30, 2003.

On September 18, 2003, at the government's request, the Clerk of the district court issued a post-judgment writ of garnishment to the May Company for amounts owed to Novak.

The writ was issued pursuant to the garnishment provisions of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3205. Novak objected to the garnishment, the government responded, and the district court held a hearing.

On March 5, 2004, the district court issued an order quashing the writ of garnishment. The government filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II

When it quashed the writ of garnishment, the district court recognized that a pension fund was the type of property that may be reached by the United States pursuant to the FDCPA. The district court, however, relying primarily on the Supreme Court's opinion in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990), and our decision in *United States v. Jackson*, 229 F.3d 1223 (9th Cir. 2000), held that garnishment was prohibited by ERISA's anti-alienation provision. The district court rejected the government's argument that the MVRA created an exception to ERISA's anti-alienation provision.

Both the interpretation of ERISA and the applicability of other statutes to ERISA are questions of law that we review de novo. *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1455 (9th Cir. 1995).

[1] Our evaluation of this case starts with the Supreme Court's explanation of ERISA's anti-alienation provision in *Guidry*. There, the Court held that the anti-alienation provision prohibited the imposition of a constructive trust on, or garnishment of, a pension covered by ERISA "unless some exception to the general statutory ban is applicable." *Guidry*, 493 U.S. at 372.

In *Guidry*, the Court was concerned with the remedial provisions of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 501(a) (1982). This statute provided, under certain circumstances, for a private right of action "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." *Guidry,* 493 U.S. at 374. The Court assumed, without deciding, that the LMRDA's statutory provision might authorize the imposition of a constructive trust, and stated that the question presented was "whether that authorization may override ERISA's prohibition on the alienation of pension benefits." *Id.* at 374-75. The Court held that it did not, reasoning that the LMRDA would not be:

> modified, impaired, or superseded by our refusal to allow ERISA pension plans to be used to effectuate the remedial goals of the LMRDA. Were we to accept respondents' position, ERISA's anti-alienation provision would be inapplicable whenever a judgment creditor relied on the remedial provisions of a federal statute.

*Id.* at 375.

The Court also declined to find any "generalized equitable exception" to ERISA's anti-alienation provision. *Id.* at 376. It observed that the anti-alienation provision reflected a "considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." *Id.* It stressed that "[i]f exceptions to this policy are to be made, it is for Congress to undertake that task." *Id.*

**[2]** The Court further explained that the creation of exceptions was particularly problematic in the context of an anti garnishment provision because such a provision, by definition, hinders the collection of a lawful debt. *Id.* Thus, a

restriction on garnishment "can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties." *Id*. (emphasis in original). The Court cautioned that courts "attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be 'especially' inequitable." *Id*. at 377. For this reason, the Court concluded that "the identification of any exception should be left to Congress." *Id*.

We determine that with the passage of the MVRA, Congress did what the Supreme Court in *Guidry* indicated it could do: enact a statutory exception to ERISA's anti-alienation provision. We find that Congress enacted a statutory exception because (a) the MVRA is a specific collection statute designed to provide victims with restitution, and (b) Congress provided for restitution orders to be enforced like tax liens, which are enforceable against ERISA pension benefits.

**[3]** While the purposes behind the remedial provision of the LMRDA at issue in *Guidry* were not clear, Congress enacted the MVRA specifically "to ensure that the loss to crime victims is recognized," and to establish that in addition to other penalties authorized by law, "the offender makes restitution to the victim." S. REP. NO. 104-179, at 12 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925-27.[1] To that end, the MVRA

---

[1]Senate Report 104-179 includes the following statements:

The purpose of H.R. 665 is to improve the administration of justice in Federal criminal cases by requiring Federal criminal defendants to pay full restitution to the identifiable victims of their crimes.

. . .

The committee amendment is intended first, to require that full restitution be ordered to the victims of all covered offenses in which there is an identifiable victim, second, to establish one set

requires district courts to order restitution for victims in cases involving property loss.[2] This is the type of broad social policy determination that the Supreme Court in *Guidry* noted was appropriate for Congress, but not the courts.

**[4]** The MVRA also provides that restitution orders are to be enforced by the government using all of the remedies that are available for the collection of criminal fines. 18 U.S.C. § 3664(m)(1)(A)(i); *see also United States v. Phillips*, 303 F.3d 548, 550-51 (5th Cir. 2002) (holding that the "MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means"). In addition, 18 U.S.C. § 3613, which is entitled "Civil remedies for satisfaction of an unpaid fine," states that "an order of restitution made pursuant to [the MVRA] is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). Thus, Congress has made the policy choice to elevate the collection of criminal restitution orders in the debt-collection food chain to equal the position enjoyed by the Internal Revenue Service in the collection of its unpaid tax demands.

---

of procedures for the issuance of restitution orders in Federal criminal cases, and third, to consolidate the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening these procedures.

S. REP. NO. 104-179, at 12-14 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925-27.

[2] 18 U.S.C. § 3663A(a)(1) states:

Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

**[5]** In § 3613, Congress also defined what limited types of property are beyond the government's reach. Subsection (a) of 18 U.S.C. § 3613 states:

> Enforcement. The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—
>
> > (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law; . . . .

Two features of this statute inform our position that ERISA pension plans are not exempted. First, the statute specifically states "[n]otwithstanding any other Federal law[,]" all properties may be reached except those specifically exempted by the statute. Second, none of the exemptions in 18 U.S.C. § 3613(a)(1) apply to ERISA pension plans.[3] We further note that as some of the exemptions are quite detailed and concern properties similar to ERISA pension plans, we cannot assume that the exclusion of ERISA pension plans was an oversight.[4]

---

[3]Additional exemptions are set forth in § 3613(a)(2) and (3), but they have no bearing on this case.

[4]For example, 26 U.S.C. § 6334(a)(6) and (7), which exempt certain annuity and pension payments and workmen's compensation payments, respectively state:

> (6) Certain annuity and pension payments. Annuity or pension payments under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension pay-

Indeed, we have already so held, having determined that the government may levy a tax lien against a delinquent taxpayer's ERISA protected assets. *In re McIntyre*, 222 F.3d 655, 660 (9th Cir. 2000). In *McIntyre* we reversed the lower court's determination that ERISA's anti-alienation provision prevented the IRS from levying on the benefits from any ERISA-governed pension plan. We explained:

> the Internal Revenue Code expressly indicates that no other federal law shall exempt property from the IRS's authority to levy a delinquent taxpayer's property under § 6331. *See* 26 U.S.C. § 6334(c). Moreover, ERISA's anti-alienation clause cannot prevent the IRS from undertaking what would otherwise be a valid exercise of its levy authority under 26 U.S.C. § 6331, because ERISA itself has a saving clause that states: "Nothing in this subchapter [which includes the anti-alienation provision] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(a).

*Id*. at 660. We concluded that "it is plain that the IRS's authority to proceed against a delinquent taxpayer's interest in benefits from an ERISA-governed plan is not constrained by ERISA's anti-alienation provision."[5] *Id*. The issue, thus, is

---

ments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll (38 U.S.C. 1562), and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code.

(7)    Workmen's compensation. Any amount payable to an individual as workmen's compensation (including any portion thereof payable with respect to dependents) under a workmen's compensation law of the United States, any State, the District of Columbia, or the Commonwealth of Puerto Rico.

[5]We also noted that other courts had reached the same conclusion, citing *Shanbaum v. United States,* 32 F.3d 180, 182-83 (5th Cir. 1994)

reduced to whether the government's writ of garnishment to enforce a criminal restitution order has the same reach as a writ of garnishment to enforce a tax lien. We hold that it does.

Although a tax liability to the federal government is conceptually different from an order of restitution to a defrauded party, Congress, in enacting the MVRA, made the social policy decision to treat the latter in the same manner as the former.[6] As noted, the Supreme Court in *Guidry* recognized that exemptions to ERISA's anti-alienation provision concerned broad social policies, which were properly within the province of Congress. *Guidry*, 493 U.S at 376-77. In enacting the MVRA and providing for the enforcement of restitution orders through 18 U.S.C. § 3613, Congress — as the Supreme Court in *Guidry* indicated that it could — has created a statutory exception to ERISA's anti-alienation provision.

We note that our conclusion is in accord with lower court decisions from around the country. *E.g., United States v. Lazorwitz*, No. 5:04 CV 161 F, 2005 WL 3732741, at * 2 (E.D.N.C. Nov. 17, 2005) (holding that because the defendant's "interest in an ERISA qualified plan does not fit within

---

("[r]eading the unambiguous language of Internal Revenue Code section 6334(c) with the mandate contained in section 1144(d) of ERISA, Shanbaum's argument that the IRS levy authority yields to the later enacted non-alienation provision is without merit"); *United States v. Sawaf,* 74 F.3d 119, 123-24 (6th Cir. 1996) (upholding the treasury regulation that authorizes the IRS to levy on the benefits of an ERISA-governed plan and applying that regulation to uphold the IRS's collection against such benefits); and *Anderson v. United States,* 149 B.R. 591, 595 (9th Cir. BAP 1992) (upholding a tax lien against benefits from an ERISA-governed plan).

[6]The broad social policies may be seen in the language in Senate Report 104-179 which notes that the legislation was needed "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due," and so that "the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society." S. REP. No. 104-179, at 12 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925.

any exceptions listed in § 3613(a), ERISA is not a bar to garnishment"); *United States v. James*, 312 F. Supp. 2d 802, 805 (E.D. Va. 2004) ("Because defendant's interest in an ERISA qualified plan does not fit within any of the exceptions listed in § 3613(a), it follows that ERISA is no bar to garnishment of a qualified pension plan to collect a criminal restitution order."); *United States v. Tyson*, 242 F. Supp. 2d 469, 474 (E.D. Mich. 2003) ("[T]his Court holds that 18 U.S.C. § 3613 is an express statutory exception to the anti-alienation provision of ERISA[.]"); *United States v. Sowada,* No. 03-240, 2003, WL 22902613, at *2 (E.D. La. Dec. 9, 2003) (holding that "the United States can garnish ERISA funds for satisfaction of criminal fines and penalties," and observing that to "hold otherwise would give convicted criminal defendants greater rights than those of citizens who owe a tax debt to the government."); *United States v. Rice,* 196 F. Supp. 2d 1196, 1202 (N.D. Okla. 2002) ("With the passage of 18 U.S.C. § 3613, Congress created an exception to ERISA's anti-alienation provision by subjecting all of a criminal defendant's property to execution for the collection of a criminal fine.").

## III

Finally, our decision is not inconsistent with our opinion in *Jackson.* There, the district court, without reference to any statute, had ordered Jackson to use benefits from his ERISA pension plan to pay a criminal restitution order. 229 F.3d at 1224. On appeal, Jackson for the first time raised ERISA's anti-alienation provision as a defense. *Id.* at 1225. We found that there was no equitable exception to the anti-alienation provision, and accordingly held that it was plain error to order Jackson to draw out his ERISA plan benefits. *Id.*

Our determination in *Jackson* that there was no applicable equitable exception to ERISA's anti-alienation provision was an accurate reading of *Guidry*, insofar as equitable principles apply generally to common law or statutory spendthrift trusts

and their equivalents. There, however, neither party called the district court's, or this court's, attention to the specific provisions of the MVRA which apply to this case. Congress, in enacting the MVRA post-*Guidry*, and in providing for the enforcement of restitution orders pursuant to 18 U.S.C. § 3613, created a statutory exception to ERISA's anti-alienation provision. Accordingly, although *Jackson* is part of the background against which we review the intersection of the MVRA and ERISA, that case does not require us to ignore the clearly expressed Congressional choice to give the MVRA the same standing the IRS has when it gathers up assets to satisfy internal revenue demands.

## IV

**[6]** The Supreme Court in *Guidry* noted that an anti-alienation provision was based on "the view that the effectuation of certain broad social polices sometimes takes precedence over the desire to do equity between particular parties." *Guidry*, 493 U.S. at 376. It also recognized that it was appropriate for Congress to create exceptions to an anti-alienation provision. *Id.* We determine that Congress, by requiring the entry of restitution orders in certain criminal cases (18 U.S.C. § 3663A(a)(1)), by making those restitution orders liens in favor of the United States (18 U.S.C. § 3613(c)), and by authorizing the enforcement of those orders against all properties not exempt from the reach of the United States for the payment of taxes (*see* 19 U.S.C. § 3613(a)), has created a statutory exemption to ERISA's anti-alienation provision. Accordingly, the district court's order quashing the writ of garnishment is **VACATED** and this matter is **REMANDED**.

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent.

The majority holds that the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, in conjunction with 18 U.S.C. § 3613, constitutes a statutory exception to ERISA's anti-alienation provision. However, *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990), as well as our decision in *United States v. Jackson*, 229 F.3d 1223 (9th Cir. 2000), require Congress to issue a clear statement of its intent to abrogate ERISA. Neither the MVRA nor 18 U.S.C. § 3613 contains such directive.

Section 206(d) of ERISA provides that benefits under its pension plans "may not be assigned or alienated." *See* 29 U.S.C. § 1056(d)(1). *Guidry* takes an uncompromising approach, finding no exceptions to ERISA's anti-alienation provision without a clear directive from Congress. "If exceptions to this policy are to be made, it is for Congress to undertake that task." *Guidry*, 493 U.S. at 346. Congress — not courts — determine the exceptions to the statutory bar.[1]

In *Jackson*, we reversed a district court decision that ordered a defendant to pay immediate restitution out of the proceeds of his undistributed ERISA pension plan. We followed *Guidry*'s unequivocal rejection of any generalized equitable exception to ERISA's anti-alienation provision, holding that no exception to ERISA's anti-alienation provision shall lie unless Congress says so.

The few exceptions to this rule are clearly indicated within the statutory text. For instance, § 104(a) of the Retirement Equity Act of 1984, *see* 29 U.S.C. § 1056(d)(3), clearly mandates that the anti-alienation provision does not apply to a

---

[1]The *Guidry* decision honors Congress' "considered . . . policy choice . . . to safeguard a stream of income for pensioners . . . even if that decision prevents others from securing relief for the wrongs done them." *Id.* at 376. And it notes that those social-policy objectives "sometimes take[ ] precedence over the desire to do equity between particular parties." *Id.* at 376.

qualified domestic relations order. *See Guidry*, 493 U.S. at 376 & n.18. ERISA contains an explicit, narrow exception to the anti alienation provision in cases of crimes against the pension plan itself. *See* 29 U.S.C. § 1056(d)(4)(A)(1) (noting that the anti-alienation provision in § 1056(d)(1) "shall not apply . . . if . . . the order or requirement to pay arises . . . under a judgment of conviction for a crime involving such plan . . . ."); *see also Jackson*, 229 F.3d at 1225.

The majority holds that statutory amendments enacted after *Guidry* but prior to *Jackson* constitute an exception to the *Guidry* principle. First, the MVRA requires district courts to order restitution for victims in cases involving loss of property. 18 U.S.C. § 3663A(a)(1). Second, under 18 U.S.C. § 3613(a), the "United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." The provision takes effect "[n]otwithstanding any other Federal law," *id.*, and "all provisions of this section are available to the United States for the enforcement of an order of restitution." *Id.* at § (f).

This statutory scheme does not evidence a clear statement to abrogate ERISA's anti-alienation provision.[2] Although the statutory text does mandate restitution, it lacks any express statement (as it does for Social Security, *see* 18 U.S.C. § 3613(a)) that restitution owed to victims can be collected from ERISA pensions.[3] And, as noted previously, there is nothing within ERISA calling for an exception for orders of

---

[2]Neither does the legislative history of the MVRA support the majority's analysis. Although Congress recognized the importance of compensating victims for their losses, the history contains no mention of ERISA or a desire to undermine the anti-alienation provision or the Supreme Court's holding in *Guidry*.

[3]The majority notes that § 3613 contains no exception for ERISA pension plans. However, the provision does not explicitly *include* it, either (as in the case of Social Security). It falls short of *Guidry*'s requirement of an explicit statement abrogating the anti-alienation provision.

restitution. Without an express directive in the restitution statute to seize ERISA pensions or a specific carve-out within ERISA's anti-alienation provision, we should not create one through judicial fiat.

The MVRA determines a certain kind of penalty the government can enforce, but it does not resolve "the narrow question whether that judgment may be collected through a particular means — a [restitution order] placed *on the pension*." *Guidry*, 493 U.S. at 376 (emphasis added). To create such an exception without clear intent is "especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt." *Id.*

As the Supreme Court noted in *Guidry*, "[i]t is an elementary tenet of statutory construction that '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one.' " *Id.* at 375 (citing *Morton v. Mancari*, 417 U.S. 535, 550-551 (1974)). Thus, unless and until Congress amends either the ERISA statute to explicitly provide an exception for restitution orders or the restitution statute to explicitly permit the seizure of ERISA pension assets, the general restitution statute cannot trump ERISA's more specific anti-alienation provision.

The majority cites a handful of out-of-circuit precedents supporting its conclusion that § 3613 constitutes an exception to the anti-alienation provision. But interpretations of courts in sister jurisdictions are not controlling, especially where, as here, *Jackson* dictates the contrary outcome. *See United States v. Martinez*, 967 F.2d 1343, 1347 (9th Cir. 1992) ("we are obliged to follow the law of our circuit over inconsistent law from other circuits"). Unless and until we review that decision en banc, it remains good law, *see United States v. Rodriguez-Lara*, 421 F.3d 932, 943 (9th Cir. 2005), and the majority is obligated to apply it.

Our opinion in *Jackson*, decided after codification of the MVRA, cannot so easily be brushed aside. *Jackson* clearly holds that undistributed ERISA funds cannot be used to make restitution payments unless, as per ERISA, the underlying crime involved the particular ERISA plan in question.

The majority sidesteps *Guidry*'s requirement of a clear congressional statement to carve out exceptions to ERISA's anti-alienation provision and sets up irreconcilable conflict with *Jackson.* I cannot support such an outcome and therefore dissent from the majority's holding.