126 T.C. No. 4


UNITED STATES TAX COURT



LOIS E. ORDLOCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17021-02.              Filed January 19, 2006.



    P resides in a community property State.  P and H
filed joint tax returns for 1982, 1983, and 1984.  P
and H paid the reported tax liabilities.  Additional
tax liabilities--i.e., understatements--arose that were
attributable to erroneous items of H (H's understate-
ments).  The parties agree that P is entitled to sec.
6015(b), I.R.C., relief for the years in issue and P's
liability for these years is zero after application of
sec. 6015(b), I.R.C.
    After the years at issue until the present, R
applied numerous payments to H's understatements.  One
payment was from P's "separate property", as defined by
Cal. Fam. Code sec. 770(a) (West 2004).  All other
payments were from P and H's "community property", as
defined under Cal. Fam. Code sec. 760 (West 2004).  P
seeks a refund pursuant to sec. 6015(g), I.R.C., of the
payments R applied to H's understatements made with her
separate property and with the community property.  R
does not dispute that P may be entitled to a refund for

the payment made from her separate property unless sec. 6511, I.R.C., applies.

Held: P is not entitled to a refund of amounts from community property used to pay H's understatements.

Clayton J. Vreeland, for petitioner.

Patrick W. Lucas, for respondent.

OPINION

GOEKE, Judge: Respondent determined that petitioner is entitled to relief under section 6015(b).[1] The issue for decision is the amount of refund, if any, petitioner is entitled to under section 6015(g).

Background

The parties submitted this case fully stipulated under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

On July 26, 2002, respondent sent petitioner a Notice of Determination Concerning Your Request for Relief from Joint and Several Liability Under Section 6015 (notice of determination). The notice of determination indicates that petitioner is entitled to relief under section 6015(b) of $160,912 for taxable years

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1982, 1983, and 1984, for which she and her spouse (Mr. Ordlock) filed joint Federal income tax returns. The following table provides the specific adjustments for each taxable year in issue as stated in the notice of determination:

| Tax Period(s) | Amount of relief you requested | Amount of relief we could allow | Amount of tax remaining |
|---|---|---|---|
| 12/31/1982 | $314 | ($621) | -0- |
| 12/31/1983 | 80,081 | 54,208 | -0- |
| 12/31/1984 | 132,606 | 132,601 | -0- |

The notice of determination further specifies that "We've granted your request in full, you don't have to take any further action."

On November 1, 2002, the date the petition was filed, petitioner resided in Anaheim, California.[2] In her petition, petitioner, through her attorney, alleged that

> The Commissioner has apparently determined to allow Petitioner's request in full, but the Notice [of determination] does not expressly state that Petitioner's request is allowed in full, and the Notice [of determination] contains various erroneous amounts and calculations which misstate and miscalculate the amounts of relief for which Petitioner is eligible under Code Section 6015(b). The effect of these misstatements and miscalculations is that the Notice [of determination] does not allow Petitioner's request for relief in full. Therefore, this petition is necessary in order to verify that the Commissioner intended to allow Petitioner's request in full and to correctly determine and state the full amount of relief for which Petitioner is eligible under Code Section 6015(b).

---

[2]We note that petitioner's petition was postmarked Oct. 24, 2002, and was therefore timely.

Given these allegations, petitioner prayed that

> this Court may hear the case and determine (i) that
> Petitioner is entitled to relief from all joint and
> several liability on the joint returns of Petitioner
> and her spouse for each of the 1982, 1983, and 1984 tax
> years, in the full amount of such liability that was
> unpaid as of July 22, 1998, and (ii) that Petitioner is
> further entitled to relief from all joint and several
> liability for interest, penalties, and other amounts
> attributable to such unpaid (as of July 22, 1998)
> liability, and (iii) that the Court grant such other
> and further relief to which Petitioner may be entitled.

In short, petitioner's petition took issue with the scope of the

section 6015(b) relief granted to petitioner in the notice of

determination.[3]

At trial, on January 5, 2004, the parties made a joint

motion for leave to submit case under Tax Court Rule 122, which

the Court granted.

The parties agree that petitioner is entitled to section

6015(b) relief from joint and several liability for the taxable

years 1982, 1983, and 1984.  The parties further agree that the

application of section 6015(b) causes petitioner to have a

Federal income tax liability (including interest, penalties, and

other amounts) of zero for those years.

---

[3] We note that the issue of whether petitioner is entitled
to a refund was not specifically raised in the petition but was
subsequently raised and briefed by the parties.

Reported Taxes and Payments

Petitioner and Mr. Ordlock (the Ordlocks) filed joint Federal income tax returns for the taxable years 1982, 1983, and 1984. On their returns they reported Federal income tax owed for each year. Respondent made numerous assessments for penalties, additional amounts of tax owed, and interest for the years in issue. The information most relevant to the refund issue presented includes the payments and credits applied to the Ordlocks' 1982, 1983, and 1984 taxable years, which were made from "community property" assets as defined in Cal. Fam. Code sec. 760 (West 2004), unless otherwise indicated. All of the payments for the years in issue are shown in the appendix hereto. The Ordlocks remained married at the time the payments on these tax liabilities were made. Although the parties agree that one payment was from separate property and the rest from community property, no effort has been made at this stage of the litigation to trace the actual sources of the payments listed in the appendix.

A.  1982

The Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for the Ordlocks' 1982 taxable year does not list their adjusted gross income or taxable income. However, the Ordlocks' 1982 tax return was filed on June 22, 1983, and reported $23,569 of Federal income tax owed. From April 15,

1983, through May 7, 2003, the Ordlocks made numerous payments, and respondent applied an overpayment credit to their 1982 tax liability. The payments and credits totaled $142,882.67.

B. 1983

The Ordlocks received an extension of time until August 15, 1984, to file their 1983 return. On June 6, 1984, the Ordlocks filed their 1983 return reporting $105,571 of Federal income tax owed. The Form 4340 for the Ordlocks' 1983 taxable year shows their adjusted gross income was $544,739 and taxable income was $400,852. From April 15, 1984, through May 5, 1998, the Ordlocks made numerous payments, and respondent applied overpayment credits to the Ordlocks' 1983 tax liability. The payments and credits totaled $293,626.95.

C. 1984

The Ordlocks received an extension of time to file their 1984 tax return until August 15, 1985. The Ordlocks reported $92,787 of Federal tax income owed for 1984 on their return, which was filed May 5, 1985. The Form 4340 for the Ordlocks' 1984 taxable year shows their adjusted gross income was $489,194 and taxable income was $436,822. From April 15, 1985, through May 9, 2002, the Ordlocks made payments and respondent applied overpayment credits to their 1984 tax liability. The payments and credits totaled $95,645.31.

## Discussion

Whether petitioner is entitled to a refund[4] under section 6015(g) related to community property assets used to pay Mr. Ordlock's understatements presents an issue of first impression for this Court.[5]  Relief from joint and several tax liability for the taxable years in issue is not an issue because respondent has conceded that petitioner is eligible for relief under section 6015(b).

### I.    Is Petitioner Entitled to a Refund?

#### A.    The Parties' Contentions and the Issue Presented

Petitioner contends that section 6015(g) is unambiguous and its application entitles her to a refund of community property assets used to pay Mr. Ordlock's understatements.  Respondent argues that petitioner is not entitled to a refund of community property assets.  Respondent contends that the "relief" provided to petitioner under section 6015(b) is relief from being held jointly or severally liable for her and Mr. Ordlock's 1982, 1983, and 1984 joint tax liabilities.  Respondent further argues that

---

[4]The parties' filings address neither when the period of limitations under sec. 6511 expires in this case, nor whether petitioner has filed a refund claim within that period. Consequently, we do not discuss these issues.

[5]This is not the first instance this issue has arisen in Federal tax litigation.  See United States v. Stolle, 86 AFTR 2d 5180, 2000-1 USTC par. 50,329 (C.D. Cal. 2000).

section 6321 provides for a lien on the Ordlocks' community property to secure Mr. Ordlock's liability and therefore no refund of community property can be granted.

The crux of this dispute is the application of the last sentence of section 6015(a) and the language of section 6015(g)(1). The last sentence of section 6015(a) provides: "Any determination under this section shall be made without regard to community property laws." Section 6015(g)(1) provides as follows:

> SEC. 6015(g). Credits and Refunds.--
>
> (1) In general.--Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

The dispute turns on the meaning of the phrases "Any determination under this section" in section 6015(a) and "notwithstanding any other law or rule of law" in section 6015(g)(1). Petitioner argues that "Any determination" in section 6015(a) is comprehensive and includes the application of section 6015(g)(1), and that State community property laws are disregarded under the "any other law" language in section 6015(g)(1).

Petitioner's position does not focus on taxable income for the taxable years at issue, but rather on the ownership of the payments made on the joint tax liabilities over the subsequent 20

years.  Petitioner asserts that section 6015 requires this Court to reallocate payments between petitioner and Mr. Ordlock based on the economic sources, despite the continued existence of the marital community.  This position has far-reaching implications as it would cause us to read section 6015 as a statutory exception to the well-established law that State law defines ownership interests in property for purposes of Federal tax collections under section 6321.  See United States v. Craft, 535 U.S. 274, 292 (2002); Aquilino v. United States, 363 U.S. 509, 513 (1960); United States v. Bess, 357 U.S. 51, 55 (1958); Morgan v. Commissioner, 309 U.S. 78, 82 (1940).

The question here is whether Congress has given us a "clear and unequivocal" intent to supplant community property law regarding payments of the type made on the Ordlocks' joint tax liability.  Powell v. Commissioner, 101 T.C. 489, 494 (1993).

B.    Statutory Interpretation and Construction

Our analysis begins with the language of the statute. Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  Statutes are to be read to give effect to their plain and ordinary meaning unless that would produce absurd or futile results.  United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543 (1940); see Tamarisk Country Club v. Commissioner, 84 T.C. 756, 761 (1985).  Moreover, where the language of a statute is clear on its face, we require unequivocal evidence of legislative purpose before construing the

statute to override the plain meaning.  <u>Halpern v. Commissioner</u>, 96 T.C. 895, 899 (1991); <u>Huntsberry v. Commissioner</u>, 83 T.C. 742, 747-748 (1984).

### 1.  <u>Section 6015</u>

Congress enacted section 6015 in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734, as a means of expanding relief to innocent spouses.  See H. Conf. Rept. 105-599, at 249-255 (1998), 1998-3 C.B. 747, 1003-1009; S. Rept. 105-174, at 55- 60 (1998), 1998-3 C.B. 537, 591-596; H. Rept. 105-364 (Part 1), at 60-62 (1997), 1998-3 C.B. 373, 432-434.  Section 6015 replaced section 6013(e) for any liability for tax arising after July 22, 1998, and any liability for tax remaining unpaid as of that date.

### 2.  <u>"Any determination"</u>

We first address whether a credit or refund under section 6015(g) is a "determination" for purposes of the last sentence of section 6015(a).  We start with the statutory use of the word "determination" in the context of community property laws and relief from joint liability.  Former section 6013(e) was added to the Internal Revenue Code of 1954 by the Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063.  It provided limited relief from joint return liability in paragraph (1) and included in paragraph (2)(A) the following "Special rules":

(2) Special rules.--For purposes of paragraph (1)--

(A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws * * *

This "Special rule" remained a part of section 6013(e) until it was replaced by section 6015 in 1998.

The House version, Internal Revenue Service Restructuring and Reform Act of 1997, H.R. 2676, 105th Cong., 1st Sess. sec. 321 (1997), of the community property laws exclusion for section 6015(a) included much the same language as former section 6013(e)(2)(A). However, the Senate amendment, RRA 1998, H.R. 2676, 105th Cong., 2d Sess. sec. 3201 (1998), and the adopted version of H.R. 2676 in RRA 1998, sec. 3201, eliminates the language modifying the word "determination" and refers to "any determination". The accompanying legislative history of the Senate amendment does not indicate any intent to disturb State law ownership interests in property for purposes of recalculating payments in fixing refunds under section 6015. See S. Rept. 105-174, at 56-57 (1998), 1998-3 C.B. 537, 592-593.

The Joint Committee's explanation of the Senate's change is as follows:

Items are generally allocated between spouses in the same manner as they would have been allocated had the spouses filed separate returns. The Secretary may prescribe other methods of allocation by regulation. The allocation of items is to be accomplished without regard to community property laws.

Staff of Joint Comm. on Taxation, Comparison of Provisions of H.R. 2676 Relating to IRS Restructuring and Reform as Passed by the House and the Senate, at III-15 (J. Comm. Print 1998); see Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1998 (the so-called Blue Book), at 68 (J. Comm. Print 1998).  This explanation is consistent with allowing more flexibility for the Secretary to write regulations regarding allocations of income items for purposes of fixing the amount of relief from joint and several liability.  This explanation is also consistent with "any determination" concerning relief from joint and several tax liability for a specific taxable year, but not consistent with an analysis of the cash or property which has been collected on said liability.

It is also noteworthy that the Senate amendments added equitable relief from joint and several liability.  This is significant because equitable relief is not based on separate income computations, which were the grist of the community property waiver under former section 6013(e).

    3.  Use of the Word "Determination" in Section 6015

After section 6015(a), the word "determine" or "determination" appears five times in section 6015, four of which are in subsection (e).  The four instances in subsection (e) refer to determinations of "relief" under section 6015 and pertain to this Court's jurisdiction to review the Secretary's final determination of that relief.  The words "determination"

and "determine" do not appear in subsection (g)(1), which provides that a "credit or refund shall be allowed or made to the extent attributable to the application of this section."  Section 6015(g)(2) provides:  "The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding."

    4.  <u>History of Section 6015(g)</u>

In 1998, paragraph (3)(A) of section 6015(e), as amended by a technical correction in the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105-277, sec. 4002(c)(2), 112 Stat. 2681-906 (1998), provided as follows:

> (3)  Applicable rules.--
>
>     (A)  Allowance of credit or refund.--
> Except as provided in subparagraph (B),
> notwithstanding any other law or rule of law
> (other than section 6512(b), 7121, or 7122),
> credit or refund shall be allowed or made to
> the extent attributable to the application of
> subsection (b) or (f).

The technical corrections in the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, sec. 313, 114 Stat. 2763A-640, 2763A-641, amended subsection (e)(3) by redesignating subsection (g) as (h) and adding new subsection (g)(1), which provides:

> SEC. 6015(g).  Credits and Refunds.--
>
>     (1)  In general.--Except as provided in
> paragraphs (2) and (3), notwithstanding any
> other law or rule of law (other than section
> 6511, 6512(b), 7121, or 7122), credit or
> refund shall be allowed or made to the extent
> attributable to the application of this
> section.

The House conference report indicates that the reason for the 2000 technical correction was as follows:

> Allowance of refunds.--The current placement in the statute * * * may inappropriately suggest that the provision applies only to the United States Tax Court, whereas it was intended to apply administratively and in all courts.  The bill clarifies this by moving the provision to its own subsection.  [H. Conf. Rept. 106-1033, at 1023 (2000), 2000-3 C.B. 304, 353.]

Accordingly, the original intent of section 6015(e)(3) remains useful for our purposes.  In that regard, the House report's initial explanation of the refund provisions in section 6015 is pertinent:  "The Tax Court may order refunds as appropriate where it determines the spouse qualifies for relief and an overpayment exists as a result of the innocent spouse qualifying for such relief."  H. Rept. 105-364 (Part 1), supra at 61, 1998-3 C.B. at 433.

Similar to the language modifying "determination" in the current version of section 6015(e), this Court's authority under section 6015(g)(1) to refund an overpayment flows from our "determination" of relief from joint and several tax liability.

> 5.  "[N]otwithstanding any other law or rule of law"

Respondent argues that pursuant to section 6321, a lien attaches to the entire amount of the Ordlocks' community property, and thus, no refund of community property can be granted.  The Federal tax lien statute does not create property rights but merely imposes consequences, Federally defined, to rights created under State law.  United States v. Craft, 535 U.S.

at 278; <u>United States v. Bess</u>, 357 U.S. at 55.  Accordingly, whether property can be reached by application of the Federal tax lien statute depends on what rights the taxpayer has in the property under State law.  <u>United States v. Craft</u>, <u>supra</u> at 278.  Petitioner counters that the "notwithstanding" provision of section 6015(g) takes precedence over all other statutes, laws, and rules of law that would conflict with or restrict a refund or credit.

The phrase "notwithstanding any other law or rule of law" should not always be read literally.  <u>Or. Natural Res. Council v. Thomas</u>, 92 F.3d 792, 796-797 (9th Cir. 1996); <u>E.P. Paup Co. v. Director, OWCP</u>, 999 F.2d 1341, 1348 (9th Cir. 1993); <u>Kee Leasing Co. v. McGahan</u> (<u>In re Glacier Bay</u>), 944 F.2d 577, 582 (9th Cir. 1991); <u>Golden Nugget, Inc. v. Am. Stock Exchange, Inc.</u>, 828 F.2d 586, 588-589 (9th Cir. 1987).  If read literally here, the phrase could be applied to avoid all State law property ownership provisions in both common law and community property States, thus creating an absence of law to define the ownership of the payments for purposes of the section 6015(g) refund jurisdiction.  Even if limited to community property provisions, petitioner's position leaves us with no law or resource to define the ownership of the payments made from 1985 until 2003 on the tax liabilities for the years at issue.

At this point, an excerpt from <u>Powell v. Commissioner</u>, 101 T.C. at 494, is especially apt:

> Another significant ingredient is reflected in the judicial attitude in respect of the interplay between Federal laws and State community property laws. This attitude is set forth in the following statement by the Supreme Court in <u>Mansell v. Mansell</u>, 490 U.S. 581, 587 (1989):
>
> > Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area. See, e.g., <u>Rose v. Rose</u>, 481 U.S. 619, 628 (1987); <u>Hisquierdo v. Hisquierdo</u>, 439 U.S. 572, 581 (1979). Thus we have held that we will not find pre-emption absent evidence that it is "'positively required by direct enactment'". <u>Hisquierdo</u>, <u>supra</u>, at 581 (quoting <u>Wetmore v. Markoe</u>, 196 U.S. 68, 77 (1904)). The instant case, however, presents one of those rare instances where Congress has <u>directly and specifically legislated in the area of domestic relations</u>. [Emphasis supplied.]
>
> In light of the foregoing approach, the Supreme Court has decreed that Federal law supplants community property law only where the congressional intent to accomplish such a result is clear and unequivocal. <u>Mansell v. Mansell</u>, <u>supra</u> (military retirement pay and veterans' disability benefits); <u>McCarty v. McCarty</u>, 453 U.S. 210 (1981) (military retirement pay); <u>Hisquierdo v. Hisquierdo</u>, 439 U.S. 572 (1979) (railroad retirement benefits); <u>Wissner v. Wissner</u>, 338 U.S. 655 (1950) (deceased army officer's life insurance); <u>In re Marriage of Hillerman</u>, 167 Cal. Rptr. 240 (Ct. App. 1980) (Social Security benefits). * * *

In addressing the question of whether there is "clear and unequivocal" congressional intent to supplant established reference to State law, the legislative history of the predecessor of section 6015(g) and the wording of the refund

provision in section 6015(e)(3) following the 1998 technical correction are helpful.

In 1998, the refund authority in section 6015(e)(3) was tied specifically "to the extent attributable to the application of subsection (b) or (f)", or in the words of the House report, was exercisable when the Tax Court "determines the spouse qualifies for relief and an overpayment exists as a result of the innocent spouse qualifying for such relief."  H. Rept. 105-364 (Part 1), supra at 61, 1998-3 C.B. at 433.

Given this history, we see an intent to create refund authority tied specifically to a determination of relief from joint and several tax liability.  However, we see no explicit intent to supplement that relief by revisiting the nature of prior payments under State community property laws.  Had Congress intended courts to interpret section 6015 in the manner that petitioner suggests, it would have provided an alternative to State law to define property rights.  Otherwise, there will be a void in the collection scheme.  We find no congressional intent to create such a void, nor to have it filled by the judiciary.

II.  Other Problems and Inconsistencies That Would Result From Petitioner's Position

A.  Disregarding Community Property Laws in the Context of Section 6015(g) Would Discriminate Against Married People Who File Separately

If spouses file separate returns and only one spouse is liable for unpaid taxes, the Internal Revenue Service can collect

out of community assets. See <u>McIntyre v. United States</u>, 222 F.3d 655 (9th Cir. 2000); see also sec. 6321. However, under petitioner's section 6015 argument, if married spouses filed jointly, the Government could not collect out of community assets without some tracing mechanism when one spouse receives section 6015 relief. Without Congress's explicit rationale or statement of such an intent, we find this result to be inconsistent.

B.  <u>Disregarding Community Property Laws in the Context of Section 6015(g) Would Create Potential Abuse</u>

We must avoid an interpretation of section 6015(g) that would create a potential for abuse by allowing community property laws to be disregarded during the collection process. Because section 6015 relief is often granted many years after the taxable year at issue, the timespan offers an opportunity to change the source of the payments that are otherwise community property. In an effort to avoid paying tax liabilities, married taxpayers in community property States could structure future payments so that ownership is attributable to the spouse requesting relief under section 6015, while continuing a jointly financed lifestyle.

C.  <u>Did Congress Leave Open the Question of How To Divide Property Between Spouses for Collection Purposes?</u>

As stated previously, another problem with petitioner's position is the lack of legislative direction regarding how to divide the assets between spouses in community property States for collection purposes. If we adopt petitioner's interpretation

of section 6015 and refrain from looking to State law, a question arises as to where courts should derive such guidance.

In addition, petitioner's approach would lead to a very complex factual analysis to trace the acquisition of the assets used to make over 20 years of tax payments. It is likely that a married couple will continue to acquire assets throughout their relationship. Tracing the acquisition of those assets to ascertain what assets should be attributed to which spouse is an administrative nightmare that would severely impede collection and lead to layers of judicial interpretation and analysis. We think Congress did not intend to create such a difficult factual issue in adopting section 6015.

III.  Concern With Denial of Effective Relief

Petitioner suggests that our holding today will frustrate congressional intent by effectively denying section 6015 relief to persons in community property States. This suggestion appears to assume that the marital community continues after the year for which relief is sought, which is obviously not always the case. Nevertheless, we will examine the consequences of our holding where the spouse seeking relief remains married in a community property State after the taxable year in question, as in the present case.

The Ordlocks remained married in California. They continued to accumulate assets and make payments on their joint tax liabilities for 1982, 1983, and 1984 for over two decades. If

Mr. Ordlock had been personally liable to a nongovernment creditor, the community assets would have been a potential source of payment to that creditor.

The question is whether Congress intended to place the Commissioner at a disadvantage concerning liabilities such as Mr. Ordlock's. As we have stated, we see no evidence of such congressional intent, nor do we see petitioner's position as advantageous to tax administration given the problems discussed previously. The nature of a marital community in California is to generally allow the individual debts of the spouses to be collected out of community assets. Cal. Fam. Code sec. 910 (West 2004); McIntyre v. United States, supra; Babb v. Schmidt, 496 F.2d 957 (9th Cir. 1974); Weinberg v. Weinberg, 432 P.2d 709, 713-714 (Cal. 1967); Grolemund v. Cafferata, 111 P.2d 641 (Cal. 1941).[6] The policies behind the law can be debated, but a decision not to disrupt this rule for tax liabilities is sound. A marital community can involve many sources of income, many assets, and many expenses. How these expenses are paid, how the income is handled, and how assets are acquired are all choices of the spouses.[7] Attempts to undo these choices and determine the

---

[6]The California Supreme Court in Grolemund v. Cafferata, 111 P.2d 641 (Cal. 1941), expressly distinguished California's community property law from the "community debt" and "separate debt" positions of Washington and Arizona.

[7]Community property rights are equal regardless of which spouse acquires the property. The following describes the nature
(continued...)

sources of payments and asset acquisitions are inherently inconsistent with the concept of a continued marital community and obviously likely to disrupt that community.

IV.   Conclusion

"Any determination" in section 6015(a) refers to determinations of whether an individual taxpayer is entitled to

---

[7](...continued)
of the equal ownership:

> The equal ownership of the community property assets and acquisitions has never been dependent upon a calculus of labor or talent.  Both man and woman equally are partners in the marriage; both equally share marital property, regardless of whether or not the actual asset was earned by one or the other.  For example, if the wife is a highly paid attorney and the husband is a school teacher or works primarily at home, the differential in actual earnings or earning capacity is irrelevant to the ownership rights of each.  The notion of marriage as a true legal partnership extends to all the property earned by either partner during marriage.  In the common law states, if a husband earns $60,000 a year and the wife's role is that of a homemaker, whether she has the primary responsibility of raising the couple's children or not, she will be entitled only to a statutory fraction of her husband's estate on his death, one-half to one-third in most states.  During the existence of the marriage she has no direct interest in his earnings, aside from her right to support.
>       In the community property system, on the other hand, both spouses have a continuing half ownership of the marital earnings from the beginning of the marriage and from the time of acquisition of the property.  Each party in the law today is an equal agent of the partnership, binding it if acting within the scope of his or her authority and if acting for the joint benefit of the family.  The California community property system adds to joint ownership the right of equal management and control.

Bassett, California Community Property Law, sec. 1:18 (2005 ed.).

relief from joint and several tax liability under section 6015. This reading is consistent with the legislative history and statutory construction; a broader reading is not.

The phrase "notwithstanding any other law or rule of law" in section 6015(g)(1) should not be read to ignore State law for purposes of defining property interests subject to a Federal tax lien under section 6321. We do not find that Congress intended for community property laws to be ignored under section 6015(g)(1) regarding payments made on tax liabilities.

Accordingly, petitioner is not entitled to a refund of an overpayment attributable to payments made from community property.

To reflect the foregoing and concessions by respondent,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

Reviewed by the Court.

GERBER, COHEN, HALPERN, CHIECHI, THORNTON, HAINES, WHERRY, KROUPA, and HOLMES, <u>JJ.</u>, agree with this majority opinion.

LARO, <u>J.</u>, dissents.

APPENDIX

Payments applied to the Ordlocks' 1982 tax liability:

| Date | Explanation | Amount |
|------|-------------|--------|
| 04/15/1983 | Withholding & excess FICA | $55,535.00 |
| 08/07/1996 | Miscellaneous payment | 99.00 |
| 09/06/1996 | Miscellaneous payment | 99.00 |
| 10/08/1996 | Miscellaneous payment | 99.00 |
| 11/07/1996 | Miscellaneous payment | 99.00 |
| 12/09/1996 | Miscellaneous payment | 99.00 |
| 01/08/1997 | Miscellaneous payment | 99.00 |
| 02/05/1997 | Miscellaneous payment | 99.00 |
| 03/05/1997 | Miscellaneous payment | 99.00 |
| 04/07/1997 | Miscellaneous payment | 99.00 |
| 04/15/1997 | Overpayment credit applied | 7,558.91 |
| 05/05/1997 | Miscellaneous payment | 99.00 |
| 06/11/1997 | Miscellaneous payment | 99.00 |
| 07/01/1997 | Miscellaneous payment | 99.00 |
| 08/04/1997 | Miscellaneous payment | 99.00 |
| 09/04/1997 | Miscellaneous payment | 99.00 |
| 10/07/1997 | Miscellaneous payment | 99.00 |
| 10/30/1997 | Miscellaneous payment | 99.00 |
| 12/09/1997 | Miscellaneous payment | 99.00 |
| 01/08/1998 | Miscellaneous payment | 99.00 |
| 02/12/1998 | Payment | 99.00 |
| 02/26/1998 | Subsequent payment- levy | 1,500.09 |
| 03/03/1998 | Subsequent payment- levy | 7,865.46 |
| 03/06/1998 | Subsequent miscel- laneous payment | 198.00 |
| 03/11/1998 | Subsequent payment- levy[1] | 2,485.97 |

| | | |
|---|---|---|
| 03/16/1998 | Subsequent payment-levy | 3,577.06 |
| 03/16/1998 | Subsequent payment-levy | 8,695.83 |
| 03/16/1998 | Subsequent payment-levy | 1,905.46 |
| 03/19/1998 | Subsequent payment | 77.36 |
| 03/23/1998 | Subsequent payment-levy | 15.00 |
| 04/08/1998 | Subsequent miscel-laneous payment | 99.00 |
| 04/14/1998 | Subsequent payment-levy | 44,567.80 |
| 05/05/1998 | Subsequent miscel-laneous payment | 99.00 |
| 06/04/1998 | Subsequent miscel-laneous payment | 99.00 |
| 07/07/1998 | Subsequent miscel-laneous payment | 99.00 |
| 08/06/1998 | Subsequent miscel-laneous payment | 601.98 |
| 08/06/1998 | Subsequent miscel-laneous payment | 99.00 |
| 09/10/1998 | Subsequent miscel-laneous payment | 99.00 |
| 10/06/1998 | Subsequent miscel-laneous payment | 99.00 |
| 11/04/1998 | Subsequent miscel-laneous payment | 99.00 |
| 12/04/1998 | Subsequent miscel-laneous payment | 99.00 |
| 01/07/1999 | Subsequent miscel-laneous payment | 99.00 |
| 02/03/1999 | Subsequent miscel-laneous payment | 99.00 |
| 03/03/1999 | Subsequent miscel-laneous payment | 99.00 |
| 05/06/1999 | Subsequent miscel-laneous payment | 99.00 |
| 06/08/1999 | Subsequent miscel-laneous payment | 99.00 |

| | | |
|---|---|---|
| 07/08/1999 | Subsequent miscel-<br>laneous payment | 99.00 |
| 08/06/1999 | Subsequent miscel-<br>laneous payment | 99.00 |
| 09/08/1999 | Subsequent miscel-<br>laneous payment | 99.00 |
| 11/04/1999 | Subsequent miscel-<br>laneous payment | 99.00 |
| 12/06/1999 | Subsequent miscel-<br>laneous payment | 99.00 |
| 01/05/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 02/09/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 03/03/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 04/04/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 05/04/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 06/06/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 07/07/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 08/08/2000 | Subsequent miscel-<br>laneous payment | 273.00 |
| 08/08/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 09/06/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 10/06/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 11/08/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 12/04/2000 | Subsequent miscel-<br>laneous payment | 99.00 |
| 01/04/2001 | Subsequent miscel-<br>laneous payment | 99.00 |
| 02/02/2001 | Subsequent miscel-<br>laneous payment | 99.00 |
| 03/05/2001 | Subsequent miscel-<br>laneous payment | 99.00 |

| 04/04/2001 | Subsequent miscel-laneous payment | 99.00 |
| 05/04/2001 | Subsequent miscel-laneous payment | 99.00 |
| 06/05/2001 | Subsequent miscel-laneous payment | 99.00 |
| 07/06/2001 | Subsequent miscel-laneous payment | 99.00 |
| 08/03/2001 | Subsequent miscel-laneous payment | 99.00 |
| 08/06/2001 | Subsequent miscel-laneous payment | 204.75 |
| 09/06/2001 | Subsequent miscel-laneous payment | 99.00 |
| 10/05/2001 | Subsequent miscel-laneous payment | 99.00 |
| 11/06/2001 | Subsequent miscel-laneous payment | 99.00 |
| 12/05/2001 | Subsequent miscel-laneous payment | 99.00 |
| 01/02/2002 | Subsequent miscel-laneous payment | 99.00 |
| 02/04/2002 | Subsequent miscel-laneous payment | 99.00 |
| 03/01/2002 | Subsequent miscel-laneous payment | 99.00 |
| 04/05/2002 | Subsequent miscel-laneous payment | 99.00 |
| 05/03/2002 | Subsequent miscel-laneous payment | 99.00 |
| 06/05/2002 | Subsequent miscel-laneous payment | 99.00 |
| 07/02/2002 | Subsequent miscel-laneous payment | 99.00 |
| 08/02/2002 | Subsequent miscel-laneous payment | 99.00 |
| 09/03/2002 | Subsequent miscel-laneous payment | 99.00 |
| 10/02/2002 | Subsequent miscel-laneous payment | 99.00 |
| 11/__/2002[2] | Subsequent miscel-laneous payment | 99.00 |

| | | |
|---|---|---|
| 12/11/2002 | Subsequent miscel-laneous payment | 99.00 |
| 01/10/2003 | Subsequent miscel-laneous payment | 99.00 |
| 02/07/2003 | Subsequent miscel-laneous payment | 99.00 |
| 03/06/2003 | Subsequent miscel-laneous payment | 99.00 |
| 04/04/2003 | Subsequent miscel-laneous payment | 99.00 |
| 05/07/2003 | Subsequent miscel-laneous payment | 99.00 |
| Total | | 142,882.67 |

[1] The parties agree that the Mar. 11, 1998, $2,485.97 payment in the form of levy was made from the petitioner's separate property", as defined in Cal. Family Code sec. 770(a) (West 2004) (separate property).

[2] The exact day was illegible.

Payments applied to the Ordlocks' 1983 tax liability:

| Date | Explanation | Amount |
|---|---|---|
| 04/15/1991 | Overpayment credit applied | $4,228.00 |
| 04/15/1984 | Withholding and excess FICA | 67,463.00 |
| 06/06/1984 | Return filed and tax paid | 35,958.45 |
| 04/15/1992 | Overpayment credit applied | 4,921.00 |
| 06/16/1995 | Subsequent miscel-laneous payment | 98.00 |
| 08/07/1995 | Subsequent miscel-laneous payment | 250.00 |
| 07/06/1995 | Subsequent miscel-laneous payment | 98.00 |
| 08/10/1995 | Subsequent miscel-laneous payment | 98.00 |
| 09/06/1995 | Subsequent miscel-laneous payment | 99.00 |

| Date | Explanation | Amount |
|------|-------------|--------|
| 10/10/1995 | Subsequent miscellaneous payment | 99.00 |
| 11/08/1995 | Subsequent miscellaneous payment | 99.00 |
| 12/06/1995 | Subsequent miscellaneous payment | 99.00 |
| 01/09/1996 | Subsequent miscellaneous payment | 99.00 |
| 02/06/1996 | Subsequent miscellaneous payment | 99.00 |
| 03/04/1996 | Subsequent miscellaneous payment | 99.00 |
| 04/09/1996 | Subsequent miscellaneous payment | 99.00 |
| 05/03/1996 | Subsequent miscellaneous payment | 99.00 |
| 06/05/1996 | Subsequent miscellaneous payment | 99.00 |
| 06/13/1996 | Subsequent payment- Federal tax lien | 78,177.66 |
| 07/08/1996 | Subsequent miscellaneous payment | 99.00 |
| 03/03/1998 | Subsequent miscellaneous payment | 100,488.28 |
| 05/05/1998 | Subsequent miscellaneous payment | 757.56 |
| Total | | 293,626.95 |

Payments applied to the Ordlocks' 1984 tax liability:

| Date | Explanation | Amount |
|------|-------------|--------|
| 04/15/1985 | Withholding & excess FICA | $52,351.00 |
| 04/15/1985 | Subsequent payment | 20,000.00 |
| 05/22/1985 | Payment with return | 22,594.00 |
| 10/07/1998 | Subsequent miscellaneous payment | 99.00 |

| | | |
|---|---|---|
| 09/03/2001 | Overpaid credit applied | 600.00 |
| 05/09/2002 | Overpaid credit applied | 1.31 |
| Total | | 95,645.31 |

THORNTON, J., concurring:  I agree with the majority opinion and write to append additional views in support of it.

"[D]omestic relations are preeminently matters of state law".  Mansell v. Mansell, 490 U.S. 581, 587 (1989).  Accordingly, "the Supreme Court has decreed that Federal law supplants community property law only where the congressional intent to accomplish such a result is clear and unequivocal."  Powell v. Commissioner, 101 T.C. 489, 494 (1993) (citing Supreme Court precedents).  There is no question or dispute that section 6015(a) supplants community property law for purposes of determining eligibility for relief from joint and several liability.  But as the majority opinion concludes, there is no "clear and unequivocal" indication that Congress intended to go further (as urged by petitioner and the dissenters) and supplant community property law that would otherwise permit a creditor (here, the Internal Revenue Service) to reach community assets and apply them to a debt owed by one spouse alone (here, Mr. Ordlock).  Rather, the legislative history strongly suggests that Congress did not intend to supplant community property law in this manner.

The predecessor of section 6015 was section 6013(e), enacted in the Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063.  Under section 6013(e), in certain circumstances a requesting spouse could be eligible for relief from tax liability with respect to erroneously omitted gross income attributable to

the other spouse.   Section 6013(e)(2)(A) provided that for this purpose, "the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws".   The legislative history makes clear that the intended effect of this provision was to disregard community property for purposes of determining the requesting spouse's eligibility for relief.[1]

In 1997, in expanding the relief available under former section 6013(e), the House bill retained language substantially identical to the just-quoted language:   "For purposes of this subsection, the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws."   H.R. 2676, 105th Cong., 1st Sess. sec. 321 (1997); H. Rept. 105-364 (Part 1), at 19 (1997), 1998-3 C.B. 373, 391.

---

[1] The House and Senate reports on the 1971 legislation state identically:

> The bill provides that the determination of the spouse to whom items of gross income, other than gross income from property, are attributable is to be made without regard to community property laws.  Thus, the rules of community property are not followed with respect to earned income or income from theft or embezzlement. Income earned by a husband, for example, and omitted from a joint return, is to be attributed to the husband, even though it may constitute community property, in determining whether the wife is entitled to relief from the tax liability under this provision. * * *  [H. Rept. 91-1734, at 4 (1971); S. Rept. 91-1537, at 4 (1971), 1971-1 C.B. 606, 608.]

The first appearance of what is now the flush language of section 6015(a) (the disputed language) occurred in 1998, in the Senate amendment to the just-described House bill. Whereas the House had agreed to liberalize the type of relief available under former section 6013(e), the Senate agreed to a different type of relief: in the case of a deficiency arising from a joint return, the Senate amendment would have permitted the spouse to elect to be liable only to the extent that items giving rise to the deficiency were allocable to the spouse.[2] For this purpose, under the Senate amendment, as under current section 6015(c), items were generally allocated between spouses in the same manner as they would have been allocated if the spouses had filed separate returns. The Senate amendment, like the disputed language of current section 6015(a), states that "Any determination under this section shall be made without regard to community property laws." H.R. 2676, sec. 3201(a), as amended and passed by the Senate on May 7, 1998. The report of the Senate Finance Committee explains this provision as follows: "The allocation of items is to be accomplished without regard to community property laws." S. Rept. 105-174, at 56 (1998), 1998-3 C.B. 537, 592.

---

[2] The Senate amendment also provided additional relief in situations where tax was shown on a return but not paid with the return. This type of relief was not included in the conference agreement. See H. Rept. 105-599, at 254 (1998), 1998-3 C.B. 747, 1008. The Senate amendment also contained provision for "equitable relief", a version of which is now found in sec. 6015(f).

Rather than choose between them, the conference agreement incorporated both the House version of expanded relief from joint and several liability (currently in section 6015(b)) and, for certain limited circumstances, the Senate version of allocable relief (currently in section 6015(c) and (d)). The conference agreement also included the Senate version of the language supplanting community property law (what is currently the flush language of section 6015(a)). Describing this provision of the Senate amendment, the conference report repeats verbatim the explanation from the Senate Finance Committee: "The allocation of items is to be accomplished without regard to community property laws." H. Rept. 105-599, at 250 (1998), 1998-3 C.B. 747, 1004.

As previously noted, this stated purpose was consistent with the longstanding provision of section 6013(e) for supplanting community property law, which had been adopted verbatim in the House bill. In fact, the conference report does not even acknowledge any difference between the House and Senate bills in this regard, or between the conference agreement and prior law. Instead, the conference report states that the conference agreement "follows the Senate amendment" with respect to deficiencies for taxpayers who are no longer married, or who are legally separated or not living together; and "also includes the provision in the House bill expanding the circumstances in which innocent spouse relief is available." Id. at 251, 1998-3

C.B. at 1005.  The conference report further states that it "follows the House bill and the Senate amendment with respect to procedural rules".  Id. at 255, 1998-3 C.B. at 1009.

In sum, the legislative history lends strong support to the view that in enacting section 6015, Congress intended to supplant community property law only for purposes of making the necessary allocations to determine eligibility for relief from joint and several liability, just as had been the case for over a quarter of a century under former section 6013(e).  There is not the slightest indication that Congress intended to expand the preemption of State law in the manner urged by petitioner and the dissenters.

The question arises whether section 6015(a) is so clear and unequivocal as to require preemption of State community property law in the manner urged by petitioner and the dissenters, notwithstanding legislative history to the contrary.  I agree with the majority opinion that the statute is ambiguous in this regard and accordingly fails to provide the "clear and unequivocal" expression of congressional intent that the Supreme Court requires for supplanting community property law.  Powell v. Commissioner, 101 T.C. at 494.  In the first instance, for reasons described in the majority opinion, there is considerable doubt as to whether allowing (or disallowing) a refund or credit constitutes a "determination" within the meaning of section

6015(a).  But no less fundamentally, in my view, for the reasons discussed below, even if such an action were considered a "determination", it would not be a determination "under" section 6015, within the meaning of section 6015(a).

Before a taxpayer may be allowed a refund or credit, there must be a determination that the taxpayer has made an overpayment.  See secs. 6401 and 6402.  The term "overpayment" is not statutorily defined but is construed to mean "any payment in excess of that which is properly due."  Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947).  Under this definition, an overpayment has two elements:  "(1) the correct tax for the year and (2) the amounts paid as tax."  Saltzman, IRS Practice and Procedure, par. 11.02, at 11-10 (rev. 2d ed. 2002).  Section 6015 addresses only the first element; i.e., the extent to which the individual should be relieved of joint and several liability for the year.[3]  Before the individual may be entitled to a refund, however, there must also be a determination of the second element; i.e., the amount of tax the individual has paid.  This determination implicates a host of factual and legal issues (including the issue of how to source payments from community property assets), none of which arise under or can be resolved

---

[3] A determination of relief under sec. 6015 would not necessarily be dispositive of the individual's correct tax for the year, inasmuch as the individual might have income taxes or other Federal taxes due unrelated to the amounts subject to relief under sec. 6015.

under section 6015.[4]  Moreover, even if it is determined that the individual has an overpayment, the amount of any refund or credit to which the individual is entitled may depend upon other issues arising outside the scope of section 6015, such as whether the overpayment should be reduced by various offsets that the Secretary is authorized to make under section 6402.

Accordingly, inasmuch as there can be no determination as to whether an individual is entitled to a refund or credit unless there is first a determination whether the individual has an overpayment, and inasmuch as it cannot be determined "under" section 6015 whether the individual has an overpayment or to what

---

[4] The following discussion illustrates some of the types of issues that arise in determining the amount of tax payments for purposes of determining whether there is an overpayment:

Before an overpayment can exist, a taxpayer must have "paid" the amount as tax.  Not all remittances are treated as payments of tax when they are received by the Service.  For example, remittances of withholding tax and estimated tax made by taxpayers before the due date of the return for the year are not considered "paid" until the due date of payment; that is, the date the return for the year is due without regard to any extension for filing the return.  Section 6401(c) indicates that despite the fact that no return is yet due or filed nor an assessment of tax made, a taxpayer may nevertheless be considered to have made an overpayment.  Although the Service treats an amount a taxpayer remits before the sending of a notice of deficiency as a deposit in the nature of a cash bond, not as a payment, the issue of whether a remittance is considered a payment or cash bond has provoked much litigation. [Saltzman, IRS Practice and Procedure, par. 11.02[2], at 11-16 and 11-17 (rev. 2d ed. 2002); fn. ref. omitted.]

extent the Secretary is authorized to reduce the overpayment in making any refund or credit, there can be no determination "under" section 6015 whether the individual is entitled to a refund or credit.[5]  Because this is not a determination "under" section 6015, it follows that section 6015(a) does not supplant community property law in the making of any such "determination".

This conclusion is consistent with the proposed regulations, which had been published when petitioner applied for relief, and the final regulations.[6]  The proposed and the final regulations

_____

[5] Of course, a determination that an individual qualifies for relief from joint and several liability under sec. 6015 will affect the amount of the refund or credit that is "attributable to the application of this section" and thus authorized to be made under sec. 6015(g).  It is telling that in describing the allowance of credits or refunds, sec. 6015(g) uses this very precise language rather than repeating the sec. 6015(a) language, "determination under this section".  Under well-established principles of statutory construction, we presume the variation in statutory phrasing to have been purposeful.  Cf. Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 258 (2002) ("Ordinarily, in statutes and other legal documents, it is presumed that if the drafter * * * varies the terminology, then the drafter intends that the meaning also vary.").

[6] The final regulations under sec. 6015 apply to elections or requests for relief filed on or after July 18, 2002.  Sec. 1.6015-9, Income Tax Regs.  Because petitioner's request for relief was filed before July 18, 2002, the final regulations are inapplicable.  Although proposed regulations are given no greater weight than a position advanced by the Commissioner on brief, proposed regulations "can be useful as guidelines where they closely follow the legislative history of the act", Van Wyk v. Commissioner, 113 T.C. 440, 444 (1999), as they do here.  Moreover, as pertinent here, the proposed and the final regulations are identical.  In these circumstances, we could scarcely repudiate the proposed regulations without also casting doubt on the validity of the final regulations, to which we owe

(continued...)

state:  "In determining whether relief is available" under section 6015, "items of income, credits, and deductions are generally allocated to the spouses without regard to the operation of community property laws."  Sec. 1.6015-1(f), Proposed Income Tax Regs., 66 Fed. Reg. 3894 (Jan. 17, 2001); sec. 1.6015-1(f), Income Tax Regs.  The proposed and the final regulations specifically state that "a requesting spouse who is relieved of joint and several liability under § 1.6015-2, § 1.6015-3, or § 1.6015-4 may nevertheless remain liable for the unpaid tax (including additions to tax, penalties and interest) to the extent provided by Federal or state transferee liability or property laws."  Sec. 1.6015-1(h)(1), Proposed Income Tax Regs., 66 Fed. Reg. 3894 (Jan. 17, 2001); sec. 1.6015-1(j), Income Tax Regs.

The preamble accompanying the issuance of the final regulations under section 6015 indicates that in finalizing the proposed regulations, the Internal Revenue Service received and rejected a suggestion to alter the just-quoted provision to achieve the result that petitioner and the dissenters now advocate.[7]  T.D. 9003, 2002-2 C.B. 294, 297.  As support for

---

[6](...continued)
considerable deference.  See Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 477 (1979).

[7] The preamble to the final regulations under sec. 6015 states:

(continued...)

rejecting this suggestion, the preamble cited, inter alia, <u>United States v. Stolle</u>, 86 AFTR 2d 5180, 2000-1 USTC par. 50,329 (C.D. Cal. 2000).  In <u>Stolle</u>, the District Court held that under California community property law, "community property tax is available to satisfy a debt from either spouse, even if the other spouse is not responsible for the debt."  <u>Id.</u> at 5186, 2000-1 USTC par. 50,329, at 83,981.  Accordingly, the court reasoned, for purposes of determining the validity of a tax lien against spouses' community property, it was "irrelevant" whether the wife was an innocent spouse under section 6015(b).  <u>Id.</u>  The court

_____

[7](...continued)

One commentator suggested that the regulations adopt a rule that the IRS would not look to community property as a collection source when a requesting spouse with an interest in such community property is granted relief under section 6015.  A federal tax lien arising under section 6321 attaches to all property and rights to property of the taxpayer.  Whether a taxpayer has an interest in property to which the lien can attach is determined by state law.  <u>Aquilino v. United States</u>, 363 U.S. 509 (1960).  Once that property interest is defined, federal law alone determines the consequences resulting from the attachment of the federal lien on the property.  <u>United States v. Drye</u>, 528 U.S. 49 (1999).  If under the law of the community property state in which the spouses reside, the IRS can look to community property to collect a liability of one of the spouses, the determination that the other spouse is entitled to relief under section 6015 does not affect the Service's ability to collect the nonrequesting spouse's liability from the community property.  See, e.g., <u>United States v. Stolle</u>, 2000-1 U.S.T.C. ¶ 50,329 (C.D. Cal. 2000); <u>Hegg v. IRS</u>, 28 P.3d 1004 (Idaho 2001).  The final regulations do not adopt this recommendation because it goes beyond the scope of the statute.  [T.D. 9003, 2002-2 C.B. 294, 297.]

stated:  "Nothing in the language or the case law suggests that the 'innocent spouse' provisions of the Internal Revenue Code prevents the government from collecting against community property in accordance with state law."  Id.; see also McIntyre v. United States, 222 F.3d 655 (9th Cir. 2000) (holding that the Internal Revenue Service may levy upon ERISA-regulated pension benefits to satisfy a husband's tax debt notwithstanding the wife's claim that she had a vested interest in half of those benefits under community property laws).

GERBER, COHEN, HALPERN, CHIECHI, HAINES, WHERRY, and KROUPA, JJ., agree with this concurring opinion.

VASQUEZ, <u>J</u>., dissenting:  I respectfully disagree with the majority opinion's holdings primarily because I believe they are contrary to the controlling statute and legislative intent.

I.  <u>Whether Petitioner Entitled to a Refund</u>

   A.  <u>Statutory Interpretation and Construction</u>

In interpreting section 6015, the Court should give effect to congressional intent.  <u>Ewing v. Commissioner</u>, 118 T.C. 494, 503 (2002); <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 329 (2000).  Congress enacted section 6015 in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734, as a means of expanding relief to innocent spouses.  See <u>Hopkins v. Commissioner</u>, 120 T.C. 451, 458-459 (2003) ("section 6015 was enacted to provide spouses with broader access to relief from joint and several tax liabilities"); <u>Washington v. Commissioner</u>, 120 T.C. 137, 159-160 (2003) ("We believe that Congress wanted to grant the broadest relief, while providing certainty in the settlement of tax refund claims"); H. Conf. Rept. 105-599, at 249-255 (1998), 1998-3 C.B. 747, 1003-1009; S. Rept. 105-174, at 65, 68 (1998), 1998-3 C.B. 537, 601, 604; H. Rept. 105-364 (Part 1), at 60-62 (1998), 1998-3 C.B. 373, 432-434.  "Moreover, we are mindful that section 6015 was designed 'to correct perceived deficiencies and inequities', and it is well settled law that 'curative legislation should be liberally construed to effectuate its remedial purpose.'"

Washington v. Commissioner, supra at 155-156; see also Tcherepnin v. Knight, 389 U.S. 332, 336 (1967) (remedial legislation should be construed broadly to effectuate its purposes); Piedmont & N. Ry. Co. v. ICC, 286 U.S. 299, 311 (1932) (remedial legislation should be given a liberal interpretation).

B.    "Application of this section"

Section 6015(g)(1) provides that "credit or refund shall be allowed or made to the extent attributable to the application of this section."  In Fernandez v. Commissioner, supra at 331, in determining whether the Court has jurisdiction to review a request for relief under section 6015(f), we stated:  "It is our view that Congress intended the term 'under this section' to include all subsections of 6015 in their entirety."  See Butler v. Commissioner, 114 T.C. 276, 290 (2000); see also Woodral v. Commissioner, 112 T.C. 19, 22-23 (1999).  Accordingly, the Court must apply all subsections of section 6015, including subsection (a), to determine the amount of a taxpayer's refund pursuant to subsection (g).

C.    Section 6015(a)

1.    The Flush Language

The flush language at the end of section 6015(a) provides: "Any determination under this section shall be made without regard to community property laws."  The majority invents a

narrow definition of "determination" despite strong indications to the contrary in the statute.

A section 6015 "determination" is not merely that a spouse is entitled to relief from joint and several liability. Contra majority op. p. 22. The amount that the Commissioner determines the electing spouse must pay towards the tax liability attributable to the nonelecting spouse[1] and the amount of any refund are part of the determination. Sec. 6015(e)(1)(A) ("the individual may petition the Tax Court * * * to determine the appropriate relief available to the individual under this section"); Washington v. Commissioner, supra at 145 (holding we have jurisdiction under section 6015(e)(1) to review all relief afforded by section 6015); Rooks v. Commissioner, T.C. Memo. 2004-127 (analyzing the Commissioner's determination and deciding whether taxpayer was entitled to a refund pursuant to section 6015(g)).

Thus, the flush language of section 6015(a) requires that community property laws be disregarded in determining the amount of a taxpayer's refund pursuant to section 6015(g). See Estate of Capehart v. Commissioner, 125 T.C. ___ (Nov. 14, 2005)

---

[1] I note that in the notice of determination respondent determined the amount of relief petitioner was entitled pursuant to sec. 6015(b), not just that petitioner was entitled to relief, and that respondent clarified his determination by stipulating the amount of petitioner's liability for the years in issue after application of sec. 6015(b).

(accepting and applying the parties stipulations which disregarded Nevada community property law for purposes of <u>allocating</u> the liability pursuant to section 6015(d)).

     2.     <u>Section 6013 Compared With Section 6015</u>

Contrary to the view of the majority, the evolution of former section 6013(e) into section 6015 shows that Congress intended to disregard community property laws with respect to <u>all</u> of section 6015 and not to limit disregarding community property laws to determining whether an electing spouse is entitled to relief pursuant to section 6015(b), (c), or (f).  Former section 6013(e)(5)--before its repeal by RRA 1998, sec. 3201(e), 112 Stat. 740--provided:  "For purposes of this subsection, the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws."  In contrast, section 6015(a) is broader than former section 6013(e)(5), providing: "Any determination under this section shall be made without regard to community property laws."

The Court should not ignore (1) this statutory change eliminating the language modifying and limiting the term "determination" in former section 6013(e)(5); <u>or</u> (2) that this same limitation was not enacted as part of section 6015 even though the initial proposals to reform former section 6013 contained this same limitation.  Internal Revenue Service

Restructuring and Reform Act of 1997, H.R. 2676, 105th Cong., 1st Sess. sec. 321 (1997); see majority op. p. 11.  Yet the majority does just that.  The majority recognizes the statutory change, majority op. p. 10, and the controlling nature of the statutory language, majority op. p. 9, but then declines to give the statutory language effect, majority op. pp. 11-12.

    D.    Section 6015(g)(1)

        1.    Evolution of Section 6015(g)(1)

Section 6015(g)(1) first was enacted as section 6015(e)(3)(A).  RRA 1998 sec. 3201, 112 Stat. 739.  Section 6015(e)(3)(A) formerly provided:  "Allowance of credit or refund.--Except as provided in subparagraph (B), notwithstanding any other law or rule of law (other than section 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of subsection (b) or (f)."

On December 21, 2000, Congress moved the provisions of former 6015(e)(3)(A) to section 6015(g)(1).  Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, sec. 313(a)(2), 114 Stat. 2763A-640.  At that time, Congress added section 6511 to the list of exceptions in the parenthetical following the phrase "notwithstanding any other law or rule of law".  Id.

        2.    "Notwithstanding any other law or rule of law"

Section 6015(g)(1) includes the phrase "notwithstanding any other law or rule of law".  Accordingly, a credit or refund

pursuant to section 6015(g) takes precedence over all other laws and rules of law that otherwise would restrict the refund or credit.

The only exceptions to this phrase are sections 6511, 6512(b), 7121, and 7122.  Sec. 6015(g)(1).  Congress did not include section 6321 in the list of exceptions.  Sec. 6015(g)(1); see Washington v. Commissioner, 120 T.C. at 160 ("the only limitations on the refund are those set forth in sections 6511, 6512(b), 7121, and 7122").  Contrary to the analysis of the majority, the Court should not add an exception to section 6015(g)(1) for section 6321.  Section 6015(a) and (g) clearly requires State community property laws to be disregarded to determine what rights the taxpayer has in the property and the amount of an electing spouse's refund.

The majority holds that "notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122)" in section 6015(g) should not be read literally but never explains what the phrase means.  See Majority op. pp. 15-18.  It must mean something--a fundamental rule of statutory construction is to give effect to all of the language of the statute.  See Hellmich v. Hellman, 276 U.S. 233 (1928); Stanford v. Commissioner, 297 F.2d 298, 308 (9th Cir. 1961), affg. 34 T.C. 1150 (1960).

a. <u>Caselaw</u>

Domestic relations are preeminently matters of State law, and the Supreme Court has consistently recognized that Congress, rarely intends to displace State authority in this area. <u>Mansell v. Mansell</u>, 490 U.S. 581, 587 (1989) (addressing the application of California community property law to military retirement pay). Accordingly, the Supreme Court stated: "we have held that we will not find preemption absent evidence that it is positively required by direct enactment." <u>Id.</u> (internal quotation marks omitted).

The plain and precise language of section 6015 evidences its preemption of State community property laws. Sec. 6015(a), (g); see <u>Mansell v. Mansell</u>, <u>supra</u> at 587, 590-591, 592. Section 6015(a) and (g) contains clear and unequivocal language expressing congressional intent to preempt State law. <u>Mansell v. Mansell</u>, <u>supra</u> at 587; <u>Dunkin v. Commissioner</u>, 124 T.C. 180, 189 (2005).

Although not discussed in detail by the majority, majority op. pp. 7 n.5, 18, respondent relies on <u>United States v. Stolle</u>, 86 AFTR 2d 5180, 2000-1 USTC par. 50,329 (C.D. Cal. 2000), and <u>McIntyre v. United States</u>, 222 F.3d 655 (9th Cir. 2000), for the proposition that a Federal tax lien attaches to community property and that section 6321 takes precedence over section 6015. I disagree. I believe section 6015 is clear and the

directives in section 6015(a) and (g)(1) take precedence over section 6321.

Stolle was a District Court order that dealt with the relationship between Federal tax liens and community property held in a revocable trust. United States v. Stolle, supra. The District Court concluded that a tax lien attached to community property for the tax debts of an individual and that community property held on behalf of the individual and his wife by a revocable trust could be used to satisfy the tax debts of the individual. Id.

Mrs. Stolle's entitlement to section 6015 relief was not at issue in the case. Id. The District Court, however, stated that, even assuming Mrs. Stolle was entitled to relief pursuant to section 6015, nothing in section 6015 prevents the Government from collecting against the community property. Id. I am not persuaded by the reasoning of Stolle because (1) the issue of Mrs. Stolle's entitlement to section 6015 relief and a refund pursuant to section 6015(g) was not before the District Court and (2) the District Court did not address the plain and clear language of section 6015(a) and (g).

Respondent relies on McIntyre v. United States, supra, for the proposition that a Federal tax lien attaches to the entire community property and that section 6321 takes precedence over section 6015. In McIntyre, the U.S. Court of Appeals for the

Ninth Circuit, to which this case is appealable, considered whether the Commissioner may levy upon ERISA-regulated pension benefits to satisfy a husband's tax debt against the claim that the wife has a vested interest in half of those benefits pursuant to California community property laws. Id. at 657. The Court of Appeals noted:

> We have held before that, by granting creditors recourse against the whole community estate on debts of only one spouse, California law "implicitly" establishes that spouse's "interest" in the whole of the community property, at least to a degree sufficient for the IRS to impose tax liens under the Internal Revenue Code. * * * [Id. at 658.]

Mrs. McIntyre argued that ERISA preempts California community property law and that ERISA's antialienation provision prevented the IRS from levying on the benefits from any ERISA-governed pension plan.[2] Id. at 659, 660. The court stated: "This argument relies on an over-exuberant interpretation of ERISA's anti-alienation provision" and rejected the premise that ERISA's antialienation provision would preclude operation of California community property law to the extent that it would permit

---

[2] The court also rejected Mrs. McIntyre's argument that California community property law gave her a vested interest in half of her husband's pension benefits and the IRS could not therefore levy on this half of the pension benefits. McIntyre v. United States, 222 F.3d 655, 658-659 (9th Cir. 2000). The court relied on Cal. Fam. Code sec. 910(a) and the reasoning in Babb v. Schmidt, 496 F.2d 957 (9th Cir. 1974), and held that creditors have recourse over the whole of the community property. Id. The issue before us, regarding the preemption of community property laws by sec. 6015(a) and (g), and the application of sec. 6015, however, were not at issue in McIntyre.

creditors to proceed against the pension benefits at issue.  Id. at 659.  In rejecting this premise, the court stated:  "ERISA's anti-alienation provision plainly does not preempt the operation of California law" because "ERISA itself has a saving clause that states:  'Nothing in this subchapter [which includes the anti-alienation provision] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States.'"  Id. at 659, 660 (insertion in original).

McIntyre is distinguishable from this case.  First, McIntyre deals with ERISA and not section 6015.  Second, section 6015(a) and (g), unlike ERISA, expressly preempts community property law.  Sec. 6015(a) (section 6015 determinations are made "without regard to community property laws"), (g) (refunds are made "notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122)").  Third, section 6015 has no saving clause like ERISA.

### b. Section 6015 Was Enacted Later

Even if section 6015 and section 6321 are in conflict, section 6015 controls because section 6015 was enacted later than section 6321 and supersedes section 6321 insofar as the two sections are in conflict.  See McLean Trucking Co. v. United States, 321 U.S. 67, 79 (1944); Adkins v. Arnold, 235 U.S. 417, 421 (1914); Specking v. Commissioner, 117 T.C. 95, 116 (2001),

affd. sub nom. <u>Haessly v. Commissioner</u>, 68 Fed. Appx. 44 (9th Cir. 2003).

Thus, I believe section 6015(g)(1) takes precedence over section 6321 where the IRS or the Court determines a taxpayer is entitled to section 6015 relief.

E.    <u>Legislative History of Section 6015</u>

The legislative history regarding refunds pursuant to section 6015 is scant.  The House report states:  "The Tax Court may order refunds as appropriate where it determines the spouse qualifies for relief and an overpayment exists as a result of the innocent spouse qualifying for such relief."  H. Rept. 105-364 (Part 1), <u>supra</u> at 61, 1998-3 C.B. at 433.  The conference and Senate reports state:  "The separate liability election may not be used to create a refund, or to direct a refund to a particular spouse."  H. Conf. Rept. 105-599, <u>supra</u> at 250, 1998-3 C.B. at 1004; S. Rept. 105-174, <u>supra</u> at 59, 1998-3 C.B. at 595.

The legislative history of section 6015 supports calculating the refund on the basis of the amount paid by the electing spouse without regard to community property laws towards the understatement or underpayment attributable to the nonelecting spouse.  Under the heading "Reasons for change", the Senate report states:

> The Committee believes that a system based on separate liabilities will provide better protection for innocent spouses than the current system.  The Committee generally believes that an electing spouse's liability

> should be satisfied by the payment of the tax attributable to that spouse's income and that an election to limit a spouse's liability to that amount is appropriate. [S. Rept. 105-174, supra at 55, 1998-3 C.B. at 591.]

The limited legislative history, however, is immaterial in the light of the plain and precise language of the statute. Mansell v. Mansell, 490 U.S. at 592, 594. "Congress is not required to build a record in the legislative history to defend its policy choices." Id.

F.    Common Law States and Community Property States

Section 6015 applies to taxpayers in common law jurisdictions and community property jurisdictions. Denying petitioner a refund of community assets used to pay Mr. Ordlock's understatements creates an inequity between taxpayers in community property jurisdictions and taxpayers in common law jurisdictions.

To obtain a refund pursuant to section 6015, taxpayers in common law jurisdictions, like the electing spouse in Washington, must prove the amount they paid toward the underpayment or understatement attributable to the nonelecting spouse (i.e., do tracing). See Washington v. Commissioner, 120 T.C. at 163; Rooks v. Commissioner, T.C. Memo. 2004-127. The majority prevents taxpayers in community property States from obtaining refunds of community property payments that can be traced to the spouse entitled to relief. I believe the directive in section 6015(a)

and (g) to disregard community property laws indicates Congress's intent to treat taxpayers in community property jurisdictions and common law jurisdictions the same.

In Washington v. Commissioner, supra at 159, the Court noted that "section 6015(g) is very specific with respect to the limitations placed on a refund".  As in Washington, petitioner's relief should not be limited merely to relief from joint and several liability as respondent contends.  Accordingly, I would conclude that community property laws are disregarded in determining the amount of petitioner's refund pursuant to section 6015(g).

## II.   Amount of Petitioner's Refund

If, in a community property State, an electing spouse who is entitled to section 6015(b) or (f) relief has made payments towards the understatement/underpayment attributable to the nonelecting spouse, the electing spouse is entitled to a refund of the amounts applied to the understatement or underpayment attributable to the nonelecting spouse and paid by the electing spouse without regard to community property laws.

This is how the refund was calculated in Washington.  In Washington, the taxpayer was employed as a Federal purchasing agent.  Washington v. Commissioner, supra at 139.  The taxpayer's spouse was a self-employed carpenter who did not pay self-employment taxes.  Id.  The taxpayer's wages were garnished,

and her overpayments from subsequent years (listed on returns she filed separately from her spouse) were applied to pay her spouse's liability. Id. at 140. The Court held that the taxpayer was entitled to a refund of the amount she paid toward the underpayment attributable to her former spouse (i.e., the amount it was inequitable to hold the taxpayer liable for pursuant to section 6015(f)). Id. at 163; see also Leissner v. Commissioner, T.C. Memo. 2003-191 (taxpayer granted relief under section 6015(f) was entitled to refund of moneys taken from her individual retirement account to pay tax liabilities attributable to her former spouse).

The record consists solely of the Forms 4340, Certificate of Assessments, Payments and Other Specific Matters, for Bayard M. and Lois Ordlock for 1982, 1983, and 1984, which do not show how much petitioner paid towards Mr. Ordlock's understatements without regard to community property laws. To decide whether petitioner has made an overpayment, I would hold--as the parties agree--that the Court needs additional evidence of the amounts petitioner paid without regard to community property laws toward Mr. Ordlock's understatements. See Washington v. Commissioner, supra; Rooks v. Commissioner, supra; Leissner v. Commissioner, supra. I would conclude that petitioner is entitled to a refund of these payments. I would hold that petitioner bears the burden

of proof on this issue.  See Rule 142(a).[3]  Additionally, I would note the applicability of the 2-year rule of section 6511, which is not excepted by section 6015(g)(1).  See <u>Washington v. Commissioner</u>, <u>supra</u> at 160-163.  As the Court would require additional evidence for resolution of this case, and as the parties agreed to leave the record open, I would hold that this case could no longer be submitted under Rule 122.

III. <u>Additional Problems With the Majority Opinion</u>

 A. <u>This Is a Section 6015 Case; Collection Is Not in Issue</u>

The majority basically holds that disregarding community property law, for purposes of section 6015, would create a statutory exception to the rule that "State law defines ownership interests in property for purposes of Federal tax collections under section 6321."  Majority op. p. 9; see also majority op. pp. 15, 17, 19.  This is a section 6015 case, <u>not</u> a collection (section 6330) case.  As the majority states:  "The issue for decision is the amount of refund, if any, petitioner is entitled to under section 6015(g)."  Majority op. p. 2.

Collection is independent from the determination of whether a taxpayer is an "innocent spouse" and the amount of the refund a taxpayer is entitled to upon a finding that he/she is an innocent

---

[3] Sec. 7491(a) is inapplicable to this case as respondent's examination of the 1982, 1983, and 1984 tax years began before July 22, 1998.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

spouse.  Respondent's collection rights are not at issue in this case.  This leads to my next point.

B.  Legal or Statutory Voids?  "General" State Property Laws Define the Source of the Payments

The majority opines that if California community property laws are disregarded to determine the amount of petitioner's refund, the Court will be left "with no law or resource to define the [source of] ownership of the payments made" on the tax liabilities for the years in issue.  Majority op. pp. 15, 17, 19. If the Court disregarded community property laws when determining the amount of section 6015(g) refunds, the Court would not be left in a void without any guidance any more than State courts in community property States are in a void when dealing with nonmarried persons.  The Court could apply the "general" property laws of California (i.e., laws regarding holding property as joint tenants, tenants in common, etc.) to determine the source (i.e., ownership) of the payments.  As I stated supra, the parties could present evidence on and brief this point.

C.  Potential for Abuse

The majority concludes that if community property laws were disregarded for purposes of section 6015(g), "married taxpayers in community property States could structure future payments so that [the economic source of] ownership is attributable to the spouse requesting relief under section 6015, while continuing a jointly financed lifestyle."  Majority op. p. 18.

The first problem with this conclusion is the implication that taxpayers who remain married should be denied the benefits provided by section 6015.  Congress did not make divorce a precondition to section 6015 relief.  Taxpayers who remain married can be innocent spouses under section 6015(b) and (f) and can obtain refunds under section 6015(g).  Notably, divorced or separated taxpayers who elect and obtain section 6015(c) relief cannot obtain refunds.  Sec. 6015(g)(3).

The second problem is that the same potential abuse is available to taxpayers in common law States.  Taxpayers in common law States can structure their payments so that the ownership and/or economic source of ownership is attributable to the spouse requesting (or who has obtained) relief under section 6015, while continuing a jointly financed lifestyle.  If the electing spouse in a common law State pays the liability attributable to the nonelecting spouse with income/assets traceable to the electing spouse, he or she is entitled to a refund of those amounts.

The third problem is that taxpayers in community property States can structure their future payments and continue to enjoy a jointly financed lifestyle (i.e., the majority opinion does not prevent this abuse).  As respondent concedes, petitioner is entitled to a refund of the amounts paid with her separate property.  Taxpayers in community property States can pay the tax liability attributable to the nonelecting spouse with separate

property of the electing spouse and then seek a refund of these amounts.

D.    Complexity/Administrative Difficulty

The majority concludes that "petitioner's approach would lead to a very complex factual analysis to trace" the assets used to make the payments and would lead to "an administrative nightmare that would severely impede collection".  Majority op. p. 19.

The fact that tracing may be complex is not a sufficient reason to disregard the plain language of the statute.  Contrary to the majority's suggestion that this would burden respondent, my proposal, supra, is that the burden of proof would be on petitioner as to this issue (i.e., to prove the economic source of ownership of the payment).

IV. Conclusion

I believe that the majority gives too little consideration to the text of section 6015 and instead digresses into policy matters that are better left to Congress.  Additionally, the majority imposes limitations and distinctions not found in the statute.  Furthermore, the majority narrowly construes the term "determination".

We can presume that when Congress enacted section 6015 in 1998 it knew (1) the effects of joint and several liability, (2) the benefits available to persons who qualify for relief from

joint and several liability, and (3) the effects that the majority finds objectionable. See majority op. pp. 18-22. These policy choices are for Congress, and not the Court, to make. Our "task is to interpret the statute as best we can, not to second-guess the wisdom of the congressional policy choice." Mansell v. Mansell, 490 U.S. at 592, 594.

I believe that section 6015(a) and (g) is unambiguous and that community property laws are to be disregarded in determining the amount of the section 6015(g)(1) refund. The IRS's ability to collect the nonelecting spouse's liability via section 6321 is distinct from the relief afforded pursuant to section 6015. See secs. 6015 (which is part of Chapter 61, Information and Returns, of the Code), 6321 (which is part of Chapter 64, Collection, of the Code). As in Washington v. Commissioner, 120 T.C. 137 (2003), I believe that Mrs. Ordlock's relief is not limited merely to relief from joint and several liability--which is very little relief indeed as, per the majority, respondent can levy on her wages, her bank accounts, and her other assets, which are community property under State law, to satisfy liabilities she was "relieved" from pursuant to section 6015.

Respectfully, I dissent.

SWIFT, WELLS, COLVIN, and FOLEY, JJ., agree with this dissenting opinion.

MARVEL, J., dissenting:  I agree with the majority's statement that "The crux of this dispute is the application of the last sentence of section 6015(a) and the language of section 6015(g)(1)."  Majority op. p. 8.  However, I disagree with the majority that the wording and structure of section 6015 and its legislative history support the majority's conclusion that a person who resides in a community property State and who qualifies for relief under section 6015 is not entitled to a refund of any part of the community property used to satisfy her spouse's Federal income tax liability.  The principal reasons for my disagreement are summarized below.

Section 6015(a) Unequivocally Provides That "Any determination [under section 6015] shall be made without regard to community property laws."

As the majority correctly points out, Congress in 1998 enacted section 6015[1] as a means of expanding relief to innocent spouses.  See H. Conf. Rept. 105-599, at 249-255 (1988), 1998-3 C.B. 747, 1003-1009; S. Rept. 105-174, at 55-60 (1998), 1998-3 C.B. 537, 591-596; H. Rept. 105-364 (Part 1), at 60-62 (1997), 1998-3 C.B. 373, 432-434.  Section 6015 replaced section 6013(e), which was often criticized as too narrowly crafted to provide broad-based relief from liability to deserving taxpayers.

---

[1]Sec. 6015 was enacted in the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734.

The last sentence of section 6015(a) unequivocally provides that "Any determination under this section shall be made without regard to community property laws."  Section 6015 does not define the term "determination", nor does it contain any words limiting the types of determinations to which the last sentence of subsection (a) refers.  In particular, section 6015 contains no language limiting the term "determination" to determinations made under subsection (b), (c), or (f), although Congress could very easily have inserted such a limitation if it had intended to enact one.

Under well-recognized principles of statutory interpretation, if a statute does not define a term, that term is given its ordinary and commonly accepted meaning.  See Keene v. Commissioner, 121 T.C. 8, 14 (2003); Payless Cashways, Inc. v. Commissioner, 114 T.C. 72, 77-28 (2000).  The term "determination" is defined in Webster's Third New International Dictionary (1971) to mean "the settling and ending of a controversy" and, alternatively, "the resolving of a question by argument or reasoning".  It is also defined in Black's Law Dictionary (7th ed. 1999) to mean "A final decision by a court or administrative agency".  Under any of these definitions, a decision regarding whether a taxpayer qualifies for a refund under section 6015(g) is a determination.

The majority nevertheless concludes that a decision as to whether a taxpayer is entitled to a refund under section 6015(g) is not a determination within the meaning of section 6015(a). The majority's analysis begins with "the statutory use of the word 'determination' in the context of community property laws and relief from joint liability", majority op. p. 10, and then traces the use of the term "determination" in former section 6013(e) and in section 6015, and in the legislative history of those sections, see majority op. pp. 10-12. Former section 6013(e)(5) contained a special rule that specifically provided that "the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws." Section 6015(a) does not contain any language modifying or limiting the word "determination". The majority attempts to find a limitation in the structure and wording of the rest of section 6015 and focuses on the fact that the words "determine" and "determination" do not appear in section 6015(g)(1). See majority op. p. 13.

Former section 6013(e)(5) specifically described a determination that had to be made without regard to community property law. However, the existence of a limitation in former section 6013(e)(5) is not sufficient to support the majority's conclusion that section 6015(a) is also so limited. Although a

comparable limitation to that contained in former section 6013(e)(5) was included in the House version of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, see Internal Revenue Service Restructuring and Reform Act of 1997, H.R. 2676, 105th Cong., 1st Sess. sec. 321 (1997); H. Rept. 105-364 (Part 1), supra at 19, 1998-3 C.B. at 391, Congress did not include in the enacted version any limitation upon the types of determinations that, under section 6015(a), must be made without regard to community property laws.  Clearly, Congress knew how to craft a limitation had it wanted to do so.  See, e.g., former sec. 6013(e)(5). Because I can discern no limitation from either the language or structure of section 6015 or from its legislative history, I conclude that a determination whether a taxpayer is entitled to a refund under section 6015(g) is a determination within the meaning of the last sentence of section 6015(a) and must be made without regard to community property laws.

The Description of "problems and inconsistencies" in the Majority Opinion Confuses the Service's Right To Collect With the Service's Obligation To Refund.

The majority points out that the Internal Revenue Service (Service) has the right to collect an unpaid tax liability from community property even if spouses file separate returns and only one spouse is liable for unpaid taxes.  Majority op. pp. 17-18. The majority contends that, under petitioner's section 6015

argument, if married spouses filed jointly, the Government could not collect out of community assets without some tracing mechanism when one spouse received section 6015 relief.  Majority op. p. 18.  I disagree.

The issue before us involves petitioner's claimed right to a refund of some portion of the tax payments made with community property.  The issue is not whether the Service has a right to collect an unpaid Federal tax liability out of community property.  Under California law, a creditor is entitled to collect an unpaid debt out of community property even if the debt is owed solely by one spouse.  See Cal. Fam. Code sec. 910 (West 2004).  That right has been exercised by the Service and upheld by the Federal courts.  See, e.g., <u>McIntyre v. United States</u>, 222 F.3d 655 (9th Cir. 2000).  A conclusion that a determination under section 6015(g) must be made without regard to community property law would not change California community property law or restrict the Service from continuing to collect from community property the liability owed by petitioner's husband.  Such a conclusion, however, might require the Service to refund to petitioner a part of what it collected from community property.

<u>Determining a Refund Under Section 6015(g)</u>

Although I disagree with the analysis and conclusion of the majority regarding the proper interpretation of section 6015, I initially was troubled by the lack of guidance in section 6015(g)

regarding how we determine whether a refund or credit is warranted. However, upon further thought, I believe that the requirement in section 6015(a) to make determinations under section 6015 without regard to community property law gives us enough guidance to enable us to make the determination required by section 6015(g).

Section 6015(g)(1) provides that "Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section." Section 6511 contains limitations on credit or refund including a time limit for filing a claim, sec. 6511(a), and a limitation on the allowance of credits and refunds, sec. 6511(b)(1) and (2). Section 6512(b) contains provisions outlining our overpayment jurisdiction in deficiency cases, including a limitation on the amount of the credit or refund. Sec. 6512(b)(3). Section 7121 (closing agreements) and section 7122 (compromises) authorize the Service to enter into agreements to resolve a taxpayer's tax liability. I interpret section 6015(g) to mean that we must take the provisions of sections 6511, 6512(b), 7121, and 7122 into account in making our determination regarding a refund or credit, but not any other law or rule of law that might operate to restrict the taxpayer's

right to a refund or credit.  We must make the determination regarding the taxpayer's right to a refund or credit without regard to community property law.  Sec. 6015(a).

If community property law is disregarded and if the taxpayer can establish that he or she has satisfied the refund requirements set forth in sections 6511 and 6512, it seems logical to me that we must trace the source of the tax payments to determine the amount of the refund.  If the payments are traced to income earned by one or both spouses, the income would be attributed to the person who earned it.  If the payments are traced to the proceeds from the sale of property and the property is subject to titling, then that property would be allocated in accordance with title and applicable State law.  For example, under California law, every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership for partnership purposes, declared in its creation to be a joint interest, or acquired as community property.[2]  Cal. Civ. Code sec. 686 (West 1982).  When

---

[2]A community property interest is one form of joint ownership that is recognized under California law.  See Cal. Fam. Code sec. 750 (West 2004).  The other forms of joint ownership are joint tenancies, tenancies in common, and community property with a right of survivorship.  Id.  Under California law, property owned jointly by a husband and wife can take any of the above forms as long as the legal requirements are met.  In addition, a husband and wife, even if they are still married, can sever the community and convert community property into other forms of joint property.

two or more people take title to property as tenants in common
under an instrument silent as to their respective shares, a
presumption arises, which may be overcome by contrary evidence,
that their shares are equal.  <u>Caito v. United Cal. Bank</u>, 576 P.2d
466, 472 (Cal. 1978); <u>Anderson v. Broadwell</u>, 6 P.2d 267, 268
(Cal. Ct. App. 1931).  When the presumption is overcome, in the
absence of other controlling facts, the respective interests must
be determined by the relative proportion of the purchase price
paid by each.  <u>Anderson v. Broadwell</u>, <u>supra</u> at 268.

If we disregard community property law in making our
determination under section 6015(g), it is both logical and
consistent with the directive in section 6015(a) to analyze
petitioner's interest in property that is owned jointly with her
husband as if she were an unmarried tenant in common under
California law.  This form of joint ownership is the closest in
character to a community property interest with no survivorship
right under California law.

<u>The Need for Remedial Legislation</u>

The majority opinion deprives taxpayers in community
property States who are otherwise entitled to relief under
section 6015 of the same relief afforded to taxpayers in common
law States.  Under the majority opinion, a taxpayer who is

granted relief under section 6015(b) or (f)[3] will be entitled to a refund (assuming other refund requirements are met) only if the taxpayer's separate property was used to satisfy all or a portion of the spouse's tax liability. Unlike a taxpayer's joint property interests in a common law State, a taxpayer's community property interest will remain a collection source <u>and</u> the taxpayer will have no right to a refund under section 6015(g) with respect to community property used to satisfy the spouse's tax liability. Given the remedial nature of section 6015 and Congress's avowed purpose of broadening a taxpayer's ability to obtain relief from joint and several liability, such a result cannot be consistent with Congress's intent.

In light of the majority opinion, Congress should revisit section 6015 and provide us with guidance regarding the proper application of section 6015 to taxpayers who reside in community property States. In the meantime, the majority opinion operates as a strong incentive for taxpayers in community property States to take advantage of State laws that may permit them to convert community property into other forms of joint ownership.

COLVIN, FOLEY, and GALE <u>JJ</u>., agree with this dissenting opinion.

---

[3]Sec. 6015(g)(2) provides that no credit or refund shall be allowed as a result of an election under subsec. (c).